394 F.Supp. 1015 (1974)
Malcolm McKINNEY, Petitioner,
v.
Joe WALKER, Warden, Spartanburg County Jail, Respondent.
Civ. A. No. 72-852.
United States District Court, D. South Carolina, Spartanburg Division.
October 23, 1974.
*1016 George H. Thomason, Spartanburg, S. C., for petitioner.
Daniel R. McLeod, Atty. Gen. of S. C., and Emmet H. Clair, Asst. Atty. Gen. of S. C., Columbia, S. C., for respondent.

ORDER

ON PETITIONER'S MOTION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254.
HEMPHILL, District Judge.
In November, 1971, petitioner, Malcolm McKinney, a young black male resident of Spartanburg County, was indicted by the Spartanburg County grand jury for assault with intent to kill one, Ray Lawson. Petitioner was represented by retained counsel, George H. Thomason, Esquire, of the Spartanburg County bar. He entered a plea of not guilty and was placed on trial before the court and a jury.
In selecting the jury of six for petitioner's criminal trial, 15 veniremen[1] were presented for examination as to their fairness and impartiality. The state prosecutor used peremptory challenges to disallow two blacks and two whites from service on the jury. Petitioner used his peremptory challenges to disallow five whites from service on the jury.
Petitioner was tried before the resulting jury of six whites in the Spartanburg County criminal court on December 6 and 7, 1971. A verdict of guilty was returned by the jury on the lesser included offense of assault of a high and aggravated nature.
The record reflects that no objection was made to the venire or to the use of peremptory challenges until after petitioner was convicted. On December 10, 1971, a motion for a new trial was made before the presiding trial judge on the following grounds:
(1) certain testimony of a Spartanburg City police officer unnecessarily prejudiced the jury; and
(2) defendant was denied a fair and impartial trial through the efforts of the state prosecutor to systematically exclude blacks from serving on trial jury panels in the Spartanburg County Court that hears cases involving black defendants. Both grounds were rejected by the trial judge and the motion for a new trial was denied.
The Honorable J. Bruce Foster, County Judge, sentenced petitioner to a term of 18 months, suspended upon the service of four months with two years probation.
A notice of appeal was filed for review by the South Carolina Supreme Court. An attempt was made to include facts in the record to be presented to the Supreme Court to demonstrate the systematic exclusion of blacks from trial juries in the Spartanburg County Court and the resulting prejudice to petitioner. A motion to strike those portions of the proposed record to the Supreme Court regarding the exclusion of blacks was made by the state prosecutor and sustained by an order of the trial judge issued on March 3, 1972.
Appeal to the State Supreme Court was made only on the question of the admissibility of the police officer's testimony and the conviction of petitioner *1017 was affirmed. State v. McKinney, 258 S.C. 570, 190 S.E.2d 30 (1972). Thus, petitioner exhausted his state administrative remedies.
Petitioner commenced service of his sentence in July, 1972, and the petition presently before this court was filed on July 11, 1972. On July 13, 1972, United States District Judge Robert Chapman ordered that petitioner be released from Spartanburg County jail immediately upon posting bail in the amount of $2,500, pending final disposition of this petition.

ISSUE
Has the State of South Carolina, through its prosecutorial use of the peremptory challenge, established a pattern of deliberate and systematic exclusion of blacks from trial juries hearing cases involving black defendants, such that petitioner has been denied equal protection of the law, in violation of the Fourteenth Amendment, and the right to trial by a fair and impartial jury, in violation of the Sixth and Fourteenth Amendments to the United States Constitution?

STATEMENT OF FACTS
The 1970 United States census shows the population for Spartanburg County, South Carolina, to consist of 137,037 whites and 36,687 non-whites. Thus, non-whites constitute 21.1% of the total population in the county.
The official records of the Spartanburg County Registration Board and the State Election Commission designate the race of the elector and show that, on April 27, 1970, there were 51,894 whites and 8,014 blacks registered to vote in the county. All qualified electors between the ages of 21 and 65 are placed on the county court venire list.
Various public records on file in the Spartanburg County Clerk of Court's office reveal that in the two calendar years, 1970 and 1971, 37 contested criminal jury trials were processed in the eleven terms of county court.[2] This figure includes the trial of petitioner in the November term, 1971.
The race of each individual defendant, the racial composition of the trial jury, the racial composition of peremptory challenges used by the state, and the racial composition of peremptory challenges used by the defense are all shown in the appendix hereto and are undisputed by the parties.
The figures show that 351 white and 50 black veniremen were called to be examined as to their fairness and impartiality in the 37 contested criminal jury trials. Thus, blacks constituted 12.4% of the veniremen called for jury duty.
A total number of 25 of the 37 jury trials involved 27 white defendants. Of the total number of 282 veniremen called, 249 were white and 33 were black. Thus, blacks constituted 11.7% of the veniremen called for examination in the trial of white defendants.
Of the 150 jurors seated to try these white defendants, 139 were white and 11 were black. Thus, blacks made up 7.3% of the jurors sitting in judgment of white defendants.
A total number of 13[3] of the 37 jury trials involved 15 black defendants. Of the total number of 161 veniremen called, 144 were white and 17 were black.[4] Thus, blacks constituted 10.6% of the veniremen called for examination in the trial of black defendants.
Of the 78 jurors seated to try these black defendants, 76 were white and two were black.[5] A total of 83 veniremen *1018 were excused by peremptory challenge from either the state or the defense from sitting in the trial of these cases. Of these 83, 68 were white and 15 were black. Of the 15 blacks, 14 were excused by peremptory challenge of the prosecution. Thus, blacks constituted 2.6% of the jurors sitting in judgment of black defendants.

ANALYSIS
This court has before it the statistical abstract of the Spartanburg County Court criminal jury records, the briefs of state and defense, the transcript of the trial in the county court, and the deposition of the state prosecutor, Spartanburg County Solicitor Claude A. Taylor, Jr., Esquire, who served during the two year period in question.
The key statistics in this analysis are the facts that: (1) blacks constituted 13.4% of the persons on the registered voters list from which the county court veniremen are drawn; (2) blacks constituted 10.6% of the veniremen called for examination in the trial of black defendants; and (3) because of peremptory challenges, mostly made by the state, blacks constituted only 2.6% of the jurors sitting in judgment of black defendants, including petitioner herein.
This judge recognizes, through his own experience as both a defense attorney and as a state prosecutor, that petitioner would be genuinely disappointed because two blacks, who petitioner might have felt would be partial to his defense presented at the criminal jury trial, were excused by the state prosecutor's use of the peremptory challenge. Indeed, such is the nature of the peremptory challenge through the history of the criminal court system in the United States that both the state prosecutor and the defense attorney have the unrestricted right to excuse those veniremen suspected of partiality, for some unstated reason, toward either prosecutor or defendant. Such is the petitioner's case in which the state prosecutor peremptorily challenged two blacks and two whites, without being required to state a reason therefor, and the defense attorney likewise peremptorily challenged five whites, possibly for suspected prejudice against blacks, or for suspected partiality toward the state prosecutor. The resulting jury of six whites refused to find petitioner guilty of the most serious charge against him but did find him guilty of a lesser-included offense.
The court finds that, although the limited county court records before this court on its face may indicate that the prosecutorial use of the peremptory challenge establishes what may be argued to be a pattern of deliberate and systematic exclusion of blacks from trial juries hearing cases involving black defendants, petitioner has not been denied equal protection under the law, in accordance with the Fourteenth Amendment, because, although the right to excuse veniremen without stating a reason therefor is qualified, the other evidence before the court does not show a perversion of the peremptory challenge by the state prosecutor to exclude blacks because of their race alone. Thus, petitioner received a fair trial by an impartial jury, in accordance with the Sixth and Fourteenth Amendments.
The court is convinced that, if statistics were compiled on the basis of any particular religion, e. g., Jewish or Catholic, or any particular nationality, e. g., Italian or Chinese, similar results might be found, i. e., there is a pattern by state prosecutors to peremptorily challenge veniremen from the same genetic, religious, or national background on the unstated grounds that such persons might be partial toward a defendant of like kin.
Such use of the peremptory challenge does not rise to the level of an unconstitutional denial of equal protection under the law, in the search for a fair and impartial jury. The applicable case law supports this conclusion.
Petitioner cites Peters v. Kiff, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972) for the general proposition that *1019 the systematic exclusion of blacks from jury service deprives a defendant of equal protection under the law and of the right to a trial by a fair and impartial jury.
A close examination of the Supreme Court's plurality opinion, by Mr. Justice Marshall, reveals that the condemned practice was the discriminatory elimination of blacks from service on the grand jury and from consideration as veniremen for trial jury selection by the jury commissioners of Muscogee County, Georgia. Petitioner has failed to carry his burden of proof that there has been discriminatory elimination of blacks from service on the grand jury (because the point is not raised) and from consideration as veniremen for trial jury selection by the jury commissioners of Spartanburg County, South Carolina.
Despite the fact that, in the two years under study, blacks constituted 13.4% of the persons on the registered voters list from which the county court veniremen are drawn, the fact that blacks constituted only 10.6% of the veniremen called for examination in the trial of black defendants does not show that the jury commissioners have systematically excluded blacks from consideration as veniremen.
In the absence of proof of any effort by the jury commissioners to exclude blacks systematically or in the absence of any gross statistical disparity on the face of the county court records showing an exclusion of blacks, petitioner's complaint seeking relief on this ground must be denied.
Admittedly, there is a slight statistical disparity on the face of the county court records but it is not so blatant as to require condemnation or to refute the conclusion that such happened without human intervention. The county jury commissioners are not charged with mathematical certainty in compiling the list of veniremen so that the list reflects the exact percentage, of the ethnic, religious, and national backgrounds of the registered voters in the county. Some degree of flexibility must be maintained and, in the absence of any evidence of a deliberate effort by the jury commissioners to exclude blacks, this court finds that petitioner's constitutional rights to equal protection and to a trial by a fair and impartial jury have not been violated.
Petitioner would have this court extend the general rule of Peters v. Kiff to the prosecutorial use of the peremptory challenge and condemn the practice where the systematic exclusion of blacks from trial jury service has occurred.
There is an absence of proof of any effort by the state prosecutor in his deposition to exclude blacks systematically because of their race, but there is a statistical disparity on the face of the county court records showing an exclusion of blacks through the state prosecutor's use of the peremptory challenge in the criminal jury trials of black defendants.
Blacks constituted 10.6% of the veniremen called for examination in the trial of black defendants, but only 2.6% of the jurors sitting in judgment of those defendants, mainly because of the state prosecutor's use of the peremptory challenge.
This court cannot blind itself to the nature of the peremptory challenge and ignore the absence of proof of any deliberate effort by the state prosecutor to exclude blacks because of their race. This court finds both reasons sufficient to dismiss the complaint seeking relief because the state prosecutor's use of the peremptory challenge allegedly violated petitioner's constitutional rights. The applicable case law supports this conclusion.
In Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), a young black male was convicted by an all-white jury in a criminal case in the circuit court of Talledega County, Alabama. Defendant appealed his conviction, asserting that he was denied equal *1020 protection of the laws by discriminatory jury selection in three respects. Only two of the three grounds are relevant here: (1) discrimination in the selection of trial jurors from the venire, demonstrated by the fact that the state prosecutor used his peremptory challenges in the case to strike all black veniremen; and (2) discrimination in the use of the peremptory challenge by the state prosecutor in the county court through the years, perverting its purpose into a scheme to exclude all blacks from ever serving on any trial jury, demonstrated by the fact that no black had ever served on a trial jury in the county court.
This is not the case here. In the majority opinion, by Mr. Justice White, the Supreme Court found, in pertinent respects, that: (1) in a particular case, a state prosecutor may constitutionally use his peremptory challenge to eliminate all of the veniremen of the defendant's race from the trial jury; and (2) the fact that no blacks had ever served on a trial jury in the county court did not show a perversion of the prosecutorial use of the peremptory challenge where the record failed to show that the state prosecutor alone had been responsible for striking all black veniremen.
Initially, the Supreme Court properly recognized the absolute nature of the peremptory challenge by the state prosecutor in vacuo. The deposition of the state prosecutor in this particular case does not show that the peremptory challenge was used to exclude the two black veniremen because of their race alone.
Secondly, a more detailed examination of the material before this court is necessary. In the Swain case, no blacks had ever served on a trial jury in the county court. In this case, blacks constituted 7.3% of the trial jurors sitting in the county court in judgment of white defendants and 2.6% of the trial jurors sitting in the county court in judgment of black defendants. Also in the Swain case, the record failed to show whether or not the state prosecutor alone had been responsible for striking all black veniremen. In this case, the record shows that, of the 15 black veniremen excused from sitting in judgment of the black defendants, 14 were peremptorily challenged by the state prosecutor and one was peremptorily challenged by the defense. Thus, although the state prosecutor has peremptorily challenged most black veniremen, he has not been responsible alone for striking all black veniremen. Therefore, this court concludes on the merits that the fact that blacks constitute only 2.6% of the trial jurors sitting in judgment of black defendants in criminal cases in Spartanburg County Court does not show a perversion of the use of the peremptory challenge by the state prosecutor.

CONCLUSION
The State of South Carolina, through its prosecutorial use of the peremptory challenge in criminal cases in Spartanburg County Court, has not established a pattern of deliberate and systematic exclusion of blacks, because of their race alone, from trial juries hearing cases involving black defendants; therefore, petitioner has not been denied equal protection of the law, in violation of the Fourteenth Amendment, and has not been denied the right to trial by a fair and impartial jury, in violation of the Sixth and Fourteenth Amendments to the United States Constitution.
Petitioner's motion for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied and petitioner will be returned to the custody of the Warden of the Spartanburg County jail to resume serving the remainder of the sentence imposed upon him by the county court judge.
And it is so ordered.

APPENDIX
An examination of records available in the Spartanburg County Clerk of Court's Office, County Sheriff's Office, County Voter Registration Office, and *1021 County Division of the Probation and Parole Board, was made during the months of January and February, 1972, and reveal the following information about the racial composition of Spartanburg County Criminal Court juries for the entire two year period covering 1970 and 1971.

 Excused by Excused by
Defendant Jury state defense
* indicates black black white black white black white
February term, 1970
* R. L. Walker 0 6 1 0 0 5
Earl Melton 0 6 1 0 0 2
March Term, 1970
* L. Carter |
* L. McBeth, Jr. > 1 5 2 0 0 0
* J. Thomas |
Ralph Brown 0 6 0 1 0 2
May term, 1970
* D. M. Bond 0 6 0 2 0 1
Perry M. Stevens |
 > 1 5 0 4 0 8
* Willie Burgess |
* Joe Feaster, III 0 6 0 1 0 1
July term, 1970
Olin Stepp |
 > 1 5 1 0 1 9
Charles Walker |
Cromer Durham 2 4 1 3 0 5
D. W. White 3 3 0 3 0 4
Alfred S. Aiken 1 5 0 1 0 5
Junior Gossett 1 5 0 0 0 0
David T. Chapman 1 5 0 0 0 0
Doyle Gray 0 6 2 1 0 4
Donnie Leroy Bell |
 > 0 6 0 2 0 2
Jerry M. Cantrell |
* Major Rice 0 6 3 1 0 3
Alton Dill 0 6 1 0 0 1
January term, 1971
J. L. F. Bryant 0 6 0 1 0 4
P. G. Vaughn 0 6 0 2 0 3
February term, 1971
James Howard 0 6 1 1 0 3
* Willie Leake 0 6 0 2 0 5
Marshall Phillips 0 6 3 1 0 4

*1022
 Excused by Excused by
Defendant Jury state defense
* indicates black black white black white black white
March term, 1971
* C. Cade |
 > 0 6 1 2 0 4
* Roosevelt Giles |
Billy B. Pierce 1 5 2 3 0 4
Isaac Pressley 0 6 1 1 1 3
May term, 1971
* Joe Feaster, III 0 6 0 2 0 3
P. F. Fincher 0 6 0 1 0 3
July term, 1971
* A. A. Epps, III 0 6 1 1 0 6
* Bub Holbert 0 6 3 2 0 4
C. D. Greenway 0 6 2 1 0 5
Jack Smith 0 6 1 1 0 4
November term, 1971
* Malcolm McKinney 0 6 2 2 0 5
Robert McHenry 0 6 1 1 0 0
Donald Smith 0 6 0 0 2 3
Nelson Gossett 0 6 1 1 0 4
Ely Culberson 1 5 0 0 0 0
* Billy Anderson 0 6 2 1 0 3
 __ ___ __ __ _ ___
 13 209 33 20 4 122

NOTES
[1] "Veniremen" includes male and female.
[2] The records also indicate that 708 guilty pleas were entered, 129 cases were continued, 149 cases were nol prossed, and 127 were disposed of in other ways or were missing.
[3] There was an overlap of one of the 37 cases because State v. Stevens and Burgess in the May term, 1970, involved the joint criminal jury trial of one black and one white defendant.
[4] Ibid.
[5] Ibid.