**Leo E. EDWARDS, Jr., Petitioner,**

v.

**Morris THIGPEN, et al., Respondents.**

**Civ. A. No. J83–0566(B).**

United States District Court,
S.D. Mississippi,
Jackson Division.

June 26, 1987.

Tom Trowbridge, Thomas J. Luz, New York City, Kenneth J. Rose, Dennis C. Sweet, Jackson, Miss., for petitioner.

Marvin L. White, Jr., Office of Atty. Gen., Jackson, Miss., for respondents.

## MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

### BACKGROUND

This case has been presented to the Court on a Petition for Writ of Habeas Corpus. The Court will briefly set out the procedural history of this case. The facts of this case are set forth in *Edwards v. State*, 413 So.2d 1007 (Miss.1982) (appeal) and *Edwards v. Thigpen*, 433 So.2d 906 (Miss.1983) (coram nobis/habeas corpus). Petitioner Leo Edwards was convicted of capital murder in the death of Lindsey Don Dixon and sentenced to death. Petitioner appealed his conviction and sentence to the Mississippi Supreme Court by direct appeal and by error coram nobis. He then petitioned this Court for federal habeas corpus relief. A stay of execution was previously

entered pending determination of all issues raised in the habeas corpus petition. Most issues were decided by this Court in *Edwards v. Thigpen*, 595 F.Supp. 1271 (S.D. Miss.1984); however, the Court amended its decision of 595 F.Supp. 1271 for a separate determination of an issue regarding peremptory challenges. By Order of January 16, 1985, this Court granted Petitioner's Motion to Amend the Judgment of September 14, 1984, to the extent that the Petitioner was entitled to an evidentiary hearing on the question of systematic exclusion of Blacks from juries in criminal trials by the prosecutor's use of peremptory challenges. The Petitioner Leo Edwards asserts that the prosecuting district attorney for the Seventh Circuit Court District of Mississippi, Ed Peters, systematically excludes Blacks from juries in violation of the Fourteenth Amendment. The Court held discovery and the date of an evidentiary hearing in abeyance pending the resolution of *Batson v. Kentucky, cert. granted* 471 U.S. 1052, 105 S.Ct. 2111, 85 L.Ed.2d 476 (1985), by the United States Supreme Court.

After *Batson* was decided, the Petitioner moved for summary judgment on the basis of a deposition of District Attorney Ed Peters. This Court denied the Motion for Summary Judgment in an Order dated January 21, 1987. An evidentiary hearing was scheduled for May 26, 1987, on the sole issue of whether the Petitioner could prove the prosecutor systematically exercised peremptory strikes in a manner which excluded black persons from serving on juries in criminal cases in violation of the Fourteenth Amendment.

The Court noted at the outset of the evidentiary hearing that this case is to be controlled by *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Although the United States Supreme Court has recently adopted a new procedure and evidentiary standard for a claim such as this, *see Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Court has also announced that *Batson* is not to apply retroactively to cases pending federal habeas corpus review at the time of the decision, *Allen v. Hardy*, 478 U.S. 255,

261–62, 106 S.Ct. 2878, 2882, 92 L.Ed.2d 199, 204, 206 (1986), or to cases in which the appeals process has been completed, *see Griffith v. Kentucky*, 479 U.S. 314, ——-——, 107 S.Ct. 708, 715–17, 93 L.Ed.2d 649, 661–62 (1987). Furthermore, the United States Court of Appeals for the Fifth Circuit has held that *Batson* will not be applied retroactively in federal habeas corpus proceedings even in death penalty cases. *See, e.g., Smith v. McCotter*, 798 F.2d 129, 132 (5th Cir.1986); *Esquivel v. McCotter*, 791 F.2d 350, 352 (5th Cir.1986). Leo Edward's conviction and appeals were final before the *Batson* decision was announced and his federal habeas corpus review was pending at that time. This Court will therefore apply the standard of *Swain* and cases following it since *Batson* will not be retroactive to this action.

The Court now sets forth its Findings of Fact and Conclusions of Law as required by Rule 52 of the Federal Rules of Civil Procedure.

### FINDINGS OF FACT

The Petitioner Leo Edwards was tried by an all-white jury in the First Judicial District for the Seventh Circuit Court District of Mississippi. The Petitioner was convicted of capital murder and sentenced to death.

The prosecuting attorney for the Seventh Circuit Court District of Mississippi is Ed Peters. Peters has served as the District Attorney since 1972. The First Judicial District of the Seventh Circuit Court District is composed primarily of the portion of Hinds County surrounding and including the City of Jackson. The Second Judicial District encompasses the remaining part of Hinds County, Mississippi. The Seventh Circuit also includes all of Yazoo County, Mississippi.

In a capital case in Mississippi, each party is allowed twelve peremptory strikes. In non-capital cases each party is allowed only six peremptory challenges. The jury selection procedure requires prospective jurors to be first presented to the state so that the prosecuting attorney must either accept the juror or exercise a peremptory challenge. The state is required to tender

a full panel of twelve jurors to the defendant. The defendant's attorney then accepts or peremptorily challenges the jurors tendered. The state is then tendered enough new jurors to refill the panel and must either accept or peremptorily challenge the jurors presented until it refills the panel or exhausts its challenges. Thereupon, the defendant either accepts or peremptorily challenges the jurors tendered by the state in the second round. This process continues until a full panel of twelve is seated either because each juror has been accepted by both sides or because one or both sides has no challenges remaining. Accordingly, since the state is required to pass first on each juror, the acceptance by the state of a black juror does not necessarily result in that juror's becoming a member of the jury unless the defendant thereafter accepts that juror or has no challenges remaining.

The issue which has been presented to the Court arose in this manner. In this trial in 1981, seven of the eight black persons appearing on Edwards' jury venire after challenges for cause were struck by use of the state's peremptory challenges. The remaining Black, a security officer, was challenged by Petitioner Edwards. Edwards then objected at trial to the all-white petit jury composition based on *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). The Court overruled the objection and proceeded to trial. Edwards presented no evidence to support his objection at trial or on initial appeal. In July of 1983 District Attorney Ed Peters gave a newspaper interview which caught the attention of the defense attorneys. In the interview Peters was quoted as saying that when presented with Blacks on a jury panel his philosophy is to "get rid of as many" as he can. Peters was also quoted as describing his "ideal juror" as a "45–year–old white male with a crewcut and white socks who welds for a living." Ed Peters was subsequently deposed in April of 1985. In this deposition Peters stated that he had a philosophy that when all other factors are equal, he will strike the black juror when presented with a choice between white and black potential jurors. The Petitioner based a summary judgment motion solely on the information contained in the deposition. By Order of January 21, 1987, this Court recognized Peters' had a philosophy of desiring to strike Blacks, but this Court denied summary judgment on the basis that it is the *practice* of systematic exclusion rather than thought processes which establish a *Swain* claim. *See United States v. Pearson*, 448 F.2d 1207, 1216 (5th Cir.1971).

The interview and deposition of Peters led to further discovery regarding this issue which revealed that the district attorney's office had kept records in at least 242 criminal cases with complete jury lists, and that Judge William F. Coleman, the circuit court judge who handled the majority of the criminal trials in the First Judicial District of the Seventh Circuit Court District, kept his own records in at least 76 other cases with complete jury lists. Stipulations of the parties reflect that data in these jury selection records of the district attorney's office and of Judge Coleman were kept in case files and include the names of potential jurors, the race of potential jurors, the peremptory strikes by the prosecution, the peremptory strikes by the defense, and the racial composition of the jury selected in each of those cases. The parties jointly submitted into evidence summary sheets indicating the circuit court case number, the name of the prosecutor, the name and race of the defendant, the numbers of black persons and white persons struck peremptorily by the prosecution and by the defense attorney, and the racial composition of the jury in each case in which complete records were kept. Juror list sheets kept by the district attorney's office were also introduced into evidence (Exhibit J–1) which include the names of all potential jurors on the venire, the race of each venireman, notations concerning the veniremen, the order in which they were reached, successful challenges for cause, peremptory challenges by both sides, and those persons finally accepted for each petit jury. The experts used in this hearing computed from this data the specific percentages of Blacks peremptorily challenged and percentages of Blacks serving on juries for the

period of time covered by the data. Although not urged in their arguments, the parties also presented evidence of certain census figures to show racial composition of the populace. The 1980 census figures for the City of Jackson show that the voting age population according to race was 57.72% white and 41.64% black. Voter registration, from which jury lists are drawn, was 64.13% white and 33.94% black.

The two experts, Dr. Allen Lichtman for the Petitioner and Dr. C.K. Rowland for the State, analyzed the data. The experts basically agreed on the statistical results, but drew different conclusions as to the meanings of these statistics. The statistics agreed to by the experts are as follows:

A. Venire, pre-peremptory strike pool

 Total  – 8591 jurors (100%)
 White – 5355 jurors (62.3%)
 Black – 3236 jurors (37.7%)

B. Jury Composition—All cases studied

 Total  – 3814 Jurors (100%)
 White – 2726 Jurors (71.4%)
 Black – 1090 Jurors (28.6%)

C. Jury Composition—Capital Crimes

 Total  – 1932 Jurors (100%)
 White – 1440 Jurors (74.5%)
 Black –  492 Jurors (25.5%)

D. Jury Composition—Black Defendants

 Total  – 2926 Jurors (100%)
 White – 2114 Jurors (72.2%)
 Black –  812 Jurors (27.8%)

E. Jury Composition—White Defendants

 Total  –  624 Jurors (100%)
 White –  426 Jurors (68.3%)
 Black –  198 Jurors (31.7%)

F. Jury Composition—D. A. Peters as Prosecutor

 Total  –  732 Jurors (100%)
 White –  524 Jurors (71.6%)
 Black –  208 Jurors (28.4%)

### PROSECUTORS' PEREMPTORY STRIKES BY RACE

G. Total Prosecutor's strikes

 Total  – 2397 (100%)
 White –  496 (20.7%)
 Black – 1901 (79.3%)

H. Prosecutor's strikes in capital crimes

 Total  – 1575 (100%)
 White –  359 (22.8%)
 Black – 1216 (77.6%)

I. Prosecutor's strikes with Black Defendants

 Total  – 1851 (100%)
 White –  343 (18.5%)
 Black – 1508 (81.5%)

J. Prosecutor's strikes with White Defendants

 Total  –  388 (100%)
 White –  125 (32.2%)
 Black –  263 (67.8%) .

K. Prosecutor's strikes with D.A. Peters as Prosecutor

 Total  –  574 (100%)
 White –  135 (23.5%)
 Black –  439 (76.5%)

The State also presented figures for the percentages of white persons struck by defense attorneys and the percentage of "foregone opportunities" to strike Blacks, meaning the statistical number for which the prosecution had peremptory challenges available to strike Blacks but chose not to do so.

Total Defense Strikes

 Total  – 2,353 (100%)
 White – 2,079 (87.98%)
 Black –  284 (12.01%)

Percentage of Foregone Opportunities to Strike

 Blacks by prosecution – 24%
 Whites by defense  – 22%

Although the data includes separate information as to several assistant district attorneys as well as information as to the district attorney himself, this Court has determined to inquire primarily into the personal practices of the lead prosecutor of this case, District Attorney Ed Peters. It is evident that Peters did not have a policy in his office of telling other assistant district attorneys how to select jurors. Even if this Court were to consider all the available statistics before it, the differences between District Attorney Peters and all other prosecutors is not substantial and would not change the ultimate result as reached

by this Court. Further, this Court has considered only the statistics of the First Judicial District of the Seventh Circuit Court District rather than of the District as a whole. The State criticized the statistical sample from this judicial district as being non-representative, but the sample consisted of approximately one-half of all the cases tried. Therefore, the Court finds the sample reasonably accurate for statistical analysis because of its size. The Court notes at this point that no other court has ever been presented with as much statistical data in a *Swain* case as has been presented to this Court.

The Court will state generally the positions of the two experts as presented in their reports and in their testimony at the evidentiary hearing. Dr. Allen Lichtman testified for the Petitioner that nearly 80% of all peremptory challenges exercised by prosecutors in the First Judicial District were exercised against Blacks. He testified that this was statistically significant and not by random chance, and therefore he concluded it established that the prosecutors purposefully excluded as many Blacks as possible. The data indicated that prosecutors consistently used their peremptory strikes to exclude Blacks in much greater proportion than their representation among potential jurors. The Court notes that statistics as reported by the parties reveal that District Attorney Ed Peters has a slightly lower average of peremptory challenges against Blacks than all other prosecutors taken as a whole: Peters exercised 76.5% of his peremptory challenges against Blacks as compared to the total number of prosecutors exercising 79.3% of the peremptory challenges against Blacks. In his report and testimony Dr. Lichtman spoke of "depressing" the percentage or proportion of black persons actually serving on juries by use of the peremptory challenges. The data revealed an actual or mean difference in the percentage of Blacks on the venire panel[1] and the percentage of Blacks serving on juries was 9% for all prosecutors. The experts did not compute an aggregate percentage for District Attorney Peters as lead prosecutor, but based on the data from the district attorneys' office and from Judge Coleman the Court finds that the difference in the percentage of Blacks on the venire panel and the percentage of Blacks serving on juries in all criminal cases was less than 10% for Peters as the prosecutor. For capital cases the difference was roughly 12% between the percentage of Blacks on the venire and Blacks actually serving on capital juries.

The two hypotheses that Dr. Lichtman formed by which to test the data were that the peremptory challenges used to strike Blacks were from a chance or random deviation or were from purposeful exclusion of Blacks. Dr. Lichtman testified that statistical tests demonstrate that the prosecutors' treatment of black and white veniremen cannot be attributed to random deviations from a race-neutral process of juror selection since he found a statistical significance factor of .000001 which corresponds to a 1 in 1–million probability that the event occurred by chance. Lichtman admitted in his report at pages 7–8 that it is possible that prosecutors may be using a race-neutral process of exclusion and that the distributions reported in Tables 1 and 2 derive from chance or random factors. But Dr. Lichtman further stated that for a very large number of cases, a race-neutral process of peremptory strikes by prosecutors should produce distribution of results in which the prosecutors strike Blacks in greater proportion than their representation among veniremen about as often as they peremptorily strike Blacks in lesser proportion than their representation among veniremen.

Dr. C.K. Rowland was presented as an expert by the State. Dr. Rowland interpreted the same data from the District Attorney's office and from Judge Coleman to show that 29% of all jurors seated in the cases covered by this data were Blacks. Dr. Rowland contends that this shows a substantial representation of Blacks on pet-

---

1. The experts and parties spoke of the percentages in the "venire," but they clarified that the data covered those persons left on the venire panel after challenges for cause. They also referred to this as the pre-peremptory strike pool.

it juries, and that this representation shows that the prosecutors were not exercising the peremptory challenges in a discriminatory manner against Blacks. Rowland criticized Lichtman for trying to prove a qualitative hypothesis by use of only quantitative data.

Rowland looked also at the qualitative information contained on the juror list sheets. Rowland concluded that information as contained in these juror information sheets revealed other factors, such as age, stability, work experience and attitude toward the prosecution, which were just as prevalent as the race factor. Despite his mention of race-neutral factors, Dr. Lichtman did not consider that black veniremen could have been excluded because of these race-neutral factors. The statistics as found by Dr. Lichtman would show a deliberate effort to eliminate jurors having these race-neutral reasons for challenge by the prosecution but these statistics would not necessarily show a purposeful exclusion of Blacks solely because of their race. Dr. Rowland testified to the fallacy of Lichtman's hypotheses on this basis. Rowland's criticism of Lichtman's hypotheses and analysis was recognized in *United States v. Childress*, 715 F.2d 1313, 1317 (8th Cir.1983) (peremptory challenge may be legitimately exercised on nonracial grounds that might correlate with group affiliation). Rowland thus concluded that the prosecutor's peremptory challenges were the result of strategic juror selection processes based on the intent to win cases and not the intent to "disenfranchise" Blacks. Rowland suggested an alternative hypothesis that other factors have just as much bearing on juror selection as race.

Dr. Rowland focused on the percentage of Blacks that do serve on juries, 29%, which closely approximates the percentage of Blacks on the venire panel after challenges for cause, 38%. Rowland thus found that Blacks were not "disenfranchised" from serving on juries. Further, Rowland found that the prosecutor often did not challenge Blacks presented to him even though he had peremptory challenges remaining but instead exercised them against white jurors. Rowland termed

these "foregone opportunities," and his analysis revealed an average number of 1.9 foregone opportunities to strike black jurors per case. When Ed Peters served as lead counsel, Rowland's analysis indicated that Peters had foregone an average of 2.35 opportunities per case to peremptorily challenge Blacks. Lichtman objected to Rowland's analysis of "foregone opportunities," yet Lichtman attempted a similar analysis in Tables 15 and 16 of his report. Lichtman's results showed that prosecutors had a slightly higher number of foregone opportunities to strike black veniremen.

Based on the statistics and analyses presented to the Court, the Court finds that prosecutors use 80% of their peremptory challenges against black veniremen presented to them after challenges for cause, and defense attorneys use 88% of their peremptory challenges against white veniremen after challenges for cause. Obviously, there is a presumption in the minds of attorneys for both the state and for defendants that Whites are partial to the prosecution and Blacks are partial to the defense.

District Attorney Ed Peters consistently takes the position in his deposition and in his live testimony that he has a philosophy that on the average Blacks are less law enforcement oriented than Whites. He finds this is caused by low socio-economic conditions of Blacks in this area as well as a history of oppression. He believes this is more true in the First Judicial District than in the Second Judicial District of the Seventh Circuit Court District because of differences in urban and rural backgrounds. Upon cross-examination the District Attorney presented a candid discussion of the mental processes he uses in selection of juries. He testified that he will and has taken Blacks as jurors in all types of cases, but that he excludes some Blacks on an individual basis for such things as beards, civil rights activities, the fact that members of the juror's family have been prosecuted, or their expressed reluctance to judge solely on circumstantial evidence. Peters testified that all other factors being equal, if he has to choose between a black venireman and a white venireman and there is no

specific reason to exclude either, he excludes the Black.

District Attorney Ed Peters has been in office for 15 years, and it is unchallenged in testimony that he was among the first district attorneys to hire black assistants in Mississippi, he has other black employees in his office, and he used courtesy titles towards Blacks during trials at a time in the history of this State when that was not normally done. Accordingly, there is no evidence that Peters himself is a racist. Although statements Peters has made about Blacks in trials may appear racist, they have been lifted out of context. Peters has expressed these statements freely and openly when his trial tactics have been questioned. Peters testified his experience has shown that in the First Judicial District Blacks tend to vote for defendants in many cases and he has had a large number of hung juries caused by black jurors voting for the defense. He testified that potential jurors in the Second Judicial District may have different attitudes, whereby he finds that more Blacks may be prosecution oriented in that judicial district. Peters also testified that it is his opinion that Blacks are more opposed to the death penalty despite the availability of a challenge under *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Most potential jurors expressing qualms about the death penalty which do not rise to the level of a *Witherspoon* challenge are Black, the District Attorney testified. The Court finds that Peters' intent when selecting a jury is to win the case he must try, and that he excludes Blacks on the basis of a real or perceived bias for the defense.

When questioned as to the specific strikes in Leo Edwards' trial, Peters was presented with juror sheets he and an assistant district attorney used to make notations during voir dire. These jury list sheets were introduced into evidence as Exhibits J–5 and J–6 jointly by the parties. The testimony and exhibits revealed that Peters peremptorily struck one black juror because she expressed conscientious scruples against imposing the death penalty. Judge Coleman had not excluded her for cause under the *Witherspoon* analysis since she stated she could vote guilty but could not follow the law and consider the death penalty. Since this was a death penalty case, Peters used one of his peremptory challenges to exclude her. Peters also excluded a white potential juror for the same reason of conscientious scruples against imposing the death penalty. Testimony and the exhibits also revealed that Peters struck three Blacks on the basis that one was a nurse and two were nurses' assistants. He testified on the witness stand and in his deposition that he customarily excludes all health professionals and social workers who are in the profession of saving and rehabilitating persons regardless of the potential jurors' race because of their propensity to be sympathetic to anyone in trouble. The district attorney and the assistant district attorney customarily note on the juror list sheets when a juror indicates that he would not be persuaded and could not convict if the state's case relies on circumstantial evidence. In addition to the previously mentioned challenges, Peters struck one Black and two Whites who had the notations that they would disregard all circumstantial evidence. Thus, the district attorney articulated specific, race-neutral reasons for challenging five of the seven black jurors peremptorily challenged by the prosecution. No specific reason was presented as to why the other two black jurors were peremptorily challenged.

### CONCLUSIONS OF LAW

The issue of systematic exclusion of Blacks by use of the prosecutor's peremptory challenges has been presented to this Court under a claim of a violation of Petitioner Leo Edwards' Fourteenth Amendment right of equal protection. The United States Supreme Court has held that "[a]lthough a Negro defendant is not entitled to a jury containing members of his race, a State's purposeful or deliberate denial to Negroes on account of race of participation as jurors in the administration of justice violates the equal protection of laws." *Swain v. Alabama*, 380 U.S. 202, 203–04, 85 S.Ct. 824, 826, 13 L.Ed.2d 759 (1965). Although not presented in the Petition for Habeas Corpus, Petitioner in oral

argument also urged the Court to consider a claim of a violation of his Sixth Amendment right to a jury drawn from a cross-section of the community based on systematic exclusion of Blacks. The Petitioner concedes that the Fifth Circuit has not adopted a Sixth Amendment exception to the equal protection analysis of *Swain, see United States v. Leslie,* 783 F.2d 541, 549–61 (5th Cir.1986), remanded 813 F.2d 658 (5th Cir.1987) (remanded for further findings on Fourteenth Amendment claim in light of *Batson*), but he urges this Court to follow two other Circuits which have approved a Sixth Amendment claim under similar circumstances, *see, e.g., Booker v. Jabe,* 775 F.2d 762, 771–73 (6th Cir.1985) and *McCray v. Abrams,* 750 F.2d 1113, 1128–29 (2d Cir.1984), vacated 478 U.S. ——, 106 S.Ct. 3289, 92 L.Ed.2d 705 (1986). This Court is bound to follow precedent of the Fifth Circuit and is not persuaded that this case presents sufficient basis to depart from it. The Court notes that the United States Supreme Court has not yet determined how the Fourteenth Amendment right of the defendant in the use of peremptory challenges may or may not be interrelated with a Sixth Amendment right to a jury drawn from a cross-section of the community. *See Batson v. Kentucky,* 476 U.S. 79, 84–85 n. 4, 106 S.Ct. 1712, 1716 n. 4, 90 L.Ed.2d 69, 79 n. 4 (1986). *See also Teague v. Lane,* 820 F.2d 832 (7th Cir.1987) (en banc) (fair cross-section requirement of 6th Amendment applies only to jury pool not petit jury); *United States v. Childress,* 715 F.2d 1313, 1318 (8th Cir.1983) (there is no Sixth Amendment exception to the equal protection analysis in *Swain* ). This Court will therefore proceed to decide the case only on the merits of Petitioner's Fourteenth Amendment claim.

Although *Swain* and its progeny never defined the precise Fourteenth Amendment right of the individual defendant, Equal Protection application has finally been defined by the Supreme Court in *Batson v. Kentucky.*

> But the defendant does have the right to be tried by a jury whose members are selected pursuant to non-discriminatory criteria. [citations omitted] The Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury venire on account of race, ... or on the false assumption that members of his race as a group are not qualified to serve as jurors [citations omitted].
>
> Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure. "The very idea of a jury is a body ... composed of the peers or equals of the person whose rights it is selected or summoned to determine; that is, of his neighbors, fellows, associates, persons having the same legal status in society as that which he holds." *Strauder* [*v. State of West Virginia*] [100 U.S. (10 Otto) ] at 308, 25 L.Ed. 664 [1880]; *see Carter v. Jury Commission of Greene County,* 396 U.S. 320, 330, 24 L.Ed.2d 549, 90 S.Ct. 518 [523] (1970). The petit jury has occupied a central position in our system of justice by safe-guarding a person accused of crime against the arbitrary exercise of power by prosecutor or judge. *Duncan v. Louisiana,* 391 U.S. 145, 156, 20 L.Ed.2d 491, 88 S.Ct. 1444 [1451] (1968). Those on the venire must be "indifferently chosen," to secure the defendant's rights under the Fourteenth Amendment to "protection of life and liberty against race or color prejudice." *Strauder,* [100 U.S. (10 Otto) ] at 309, 25 L.Ed. 664.

*Batson,* 476 U.S. at 85–87, 106 S.Ct. at 1717, 90 L.Ed.2d at 80–81.

As previously stated, the issue of this case is controlled by *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), and the cases interpreting it. *Batson v. Kentucky* announced new evidentiary standards by which to consider a claim such as this, and the Court is well aware that this case involves the death penalty. Yet *Batson* has been held not to apply retroactively to cases pending federal habeas corpus review, *Allen v. Hardy,* 478 U.S. 225, ——, 106 S.Ct. 2878, 2880–82, 92 L.Ed.2d 199, 205–06 (1986), and this has been true even in death penalty cases. *See*

*Smith v. McCotter*, 798 F.2d 129, 132 (5th Cir.1986).

The Fifth Circuit has stated that in order to require an examination of the prosecutor's exercise of peremptory challenges, a defendant must show that a prosecutor has used the challenges to cause a systematic exclusion of Blacks from petit juries. *United States v. Durham*, 587 F.2d 799, 801 (5th Cir.1979). Further, it is "conduct" on which the prosecutor should be available for questioning rather than any purported philosophy. *United States v. Pearson*, 448 F.2d 1207, 1216 (5th Cir.1971). The basis of a prima facie case of systematic exclusion of Blacks by use of the prosecutor's peremptory challenges was first stated in *Swain v. Alabama:*

> [W]hen the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries, the Fourteenth Amendment claim takes on added significance. [citation omitted] In these circumstances, giving even the widest leeway to the operation of irrational but trial-related suspicions and antagonisms, it would appear that the purposes of the peremptory challenges are being perverted. If the State has not seen fit to leave a single Negro on any jury in a criminal case, the presumption protecting the prosecutor may well be overcome. Such proof might support a reasonable inference that Negroes are excluded from juries for reasons wholly unrealted to the outcome of the particular case on trial and that the peremptory system is being used to deny the Negro the same right and opportunity to participate in the administration of justice enjoyed by the white population. These ends the peremptory challenge is not designed to facilitate or justify.

*Swain*, 380 U.S. at 223–24, 85 S.Ct. at 837–38. The *Swain* Court then examined the record presented to it regarding the prosecutor's peremptory challenges to find that the record did not show "with any acceptable degree of clarity, ... when, how often, and under what circumstances the prosecutor alone has been responsible for striking those Negroes who have appeared on petit jury panels." *Id.* at 224, 85 S.Ct. at 838.

The United States Supreme Court thus established that to prove a prima facie case the petitioner had to present evidence of the prosecutor's use of peremptory challenges over a period of time. *Id.* at 227, 85 S.Ct. at 839.

The Eleventh Circuit has also addressed the problem of systematic exclusion. In *Willis v. Zant*, 720 F.2d 1212 (11th Cir. 1983), *cert. denied*, 467 U.S. 1256, 104 S.Ct. 3546, 82 L.Ed.2d 849 (1984), the court recognized that the Supreme Court has never enumerated the elements of a prima facie case under *Swain*. 720 F.2d at 1220. The Eleventh Circuit remanded the case for an evidentiary hearing on the question of systematic exclusion of Blacks by use of peremptory challenges and announced certain criteria to aid the district court in its handling of this claim.

> At his evidentiary hearing, petitioner must prove on specific facts that [the prosecutor] had a systematic *and intentional* practice of excluding blacks from traverse juries in criminal trials through the exercise of peremptory challenges, and that this practice continued unabated in petitioner's trial. The exclusion must have occurred "in case after case, whatever the circumstances, whatever the crime and whoever the defendant may be." *Swain*, 380 U.S. at 223, 85 S.Ct. at 837. Petitioner is not required to show that the prosecutor *always* struck *every* black venireman offered to him, *Pearson*, 448 F.2d at 1217, but the facts must manifestly show an intent on the part of the prosecutor to disenfranchise blacks from traverse juries in criminal trials in his circuit, "to deny the Negro the same right and opportunity to participate in the administration of justice enjoyed by the white population." *Swain*, 380 U.S. at 224, 83 S.Ct. at 838. The prosecutor's

use of peremptory challenges in only a few trials is clearly insufficient to state a prima facie case, as would be a pattern of exclusion which occurred for only a few weeks. In short, petitioner must marshal enough historical proof to overcome the presumption of propriety in which *Swain* clothes peremptory challenges, and thereby show [the prosecutor's] intent to discriminate invidiously.

If petitioner can prove his prima facie case, the veil insulating prosecutorial discretion will be rent. The prosecutor, however, may rebut petitioner's prima facie case in two ways. First, he may make "a showing that racially neutral selection procedures have produced the [historical and systematic] disparity." [citations omitted] ...

A second way in which the prosecutor may rebut a prima facie case under *Swain* is not to show racially neutral reasons for the systematic disparity, but rather to show neutral reasons for the striking of all of the blacks in petitioner's trial itself.

*Willis*, 720 F.2d at 1220–21 (emphasis in original). The Fifth Circuit in *United States v. Pearson* did state, however, that it did not read *Swain* "as meaning that the attack on the Government's use of its challenges must fail if the impermissible use is not exercised one hundred percent of the time." *Pearson*, 448 F.2d at 1217.

Most cases involving a *Swain* claim have not proceeded to the point of establishing a prima facie case because there was not sufficient proof of the prosecutor's practice of exercising peremptory challenges over a period of time. *E.g. United States v. Tolliver*, 780 F.2d 1177, 1182 (5th Cir.1986); *Prejean v. Blackburn*, 743 F.2d 1091, 1104 (5th Cir.1984); *United States v. Carlton*, 456 F.2d 207, 208 (5th Cir.1972); *Pearson*, 448 F.2d at 1217–18. *See also Thomas v. Wainwright*, 788 F.2d 684, 689 (11th Cir. 1986); *United States v. Hawkins*, 781 F.2d 1483, 1487 (11th Cir.1986). In fact, this Court has been able to find only two successful *Swain* cases. *E.g., State v. Washington*, 375 So.2d 1162 (La.1979); *State v. Brown*, 371 So.2d 751 (La.1979). In the two reported Louisiana cases there was

only testimony by lawyers of the prosecutor's practice of using peremptory challenges to exclude Blacks. In the present case, the Court has before it the numbers of veniremen, how many were struck by race, and how many were retained for jury service by race as set forth in this Court's findings of fact. This Court has more information and statistical data over a longer period of time than has been presented to any other court.

The Petitioner must establish a prima facie case under *Swain* by presenting evidence or testimony 1) of a history of systematic exclusion, and 2) that this systematic exclusion continued into the present case. The Court has found that the Petitioner's data shows the prosecutor used nearly 80% of his peremptory challenges to strike Blacks and there were no Blacks serving on the jury in Edwards' trial. This evidence coupled with the statements of the prosecutor of his "philosophy" establishes that the Petitioner has presented a prima facie case sufficient to overcome the presumption of propriety of the prosecutor's peremptory challenges under *Swain*.

Upon this finding, the burden shifts to the State to rebut the prima facie case. An effective rebuttal of either prong of the prima facie case, the historical disparity indicating systematic exclusion or the continuation of systematic exclusion into the present case, will defeat a *Swain* claim. *See Willis v. Zant*, 720 F.2d at 1220–21 (prosecutor may rebut in two ways). In the evidentiary hearing in this case, the prosecutor tried to rebut the historical data of systematic exclusion but not the proof of continuation into Edwards' trial. The State put on expert testimony for rebuttal of any historical exclusion, but the State professed not to be rebutting evidence of any continued exclusion in Edwards' trial since the State's attorney was apparently expecting, without making any request, that the Court would bifurcate the hearing and announce a prima facie case had been made before the State had to rebut. Despite the State's failings, certain evidence was nevertheless elicited which may rebut the Petitioner's prima facie case.

Regarding rebuttal of the first prong of a history of systematic exclusion, the Court has a distinct choice between the positions of the Petitioner and the Respondents, both of which are supported by the evidence presented. The Court may accept the Petitioner's theory, supported by the evidence and analysis of his expert that, in accordance with an express philosophy, the prosecutor systematically excluded Blacks by using nearly 80%[2] of his peremptory challenges to strike Blacks from juries. Or, the Court may accept as more persuasive the position of the Respondents also supported by the evidence and analysis of their expert that despite the high number of challenges to Blacks by the prosecutors the aggregate resulting juries had a substantial black representation (29%) and this proves that no systematic exclusion has occurred. In analyzing this pre-*Batson* case, the Court must determine whether systematic exclusion is proved by the percentages against Blacks in the challenging process or disproved by the percentages in the resulting juries.

Petitioner argues that this Court should be guided only by the 80% statistics from the challenging process itself. Counsel for the Petitioner argues that the Court should look for a proportionate number of peremptory challenges exercised against Blacks as compared to the number of Blacks on the venire panel. Petitioner's expert testimony primarily concentrated on the difference between the percentage of Blacks among all veniremen and the percentage of Blacks among veniremen peremptorily challenged by the prosecutor; he termed this "depressing" the percentage of Blacks allowed to serve on juries. But a defendant does not have a right to a jury composed in equal portion to the population or to a jury of any particular composition. *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); *Strauder v. West Virginia,* 100 U.S. (10 Otto) 303, 305, 25 L.Ed. 664 (1880); *United States v. Carter,* 528 F.2d 844, 848 (8th Cir.1975); *Carlton,* 456 F.2d at 208. The Court must avoid the potential for requiring quotas in selecting a jury. A particular defendant does not have an equal protection right to be tried by jurors of any particular race. *Carlton,* 456 F.2d at 208.

The choice before the Court is which set of data or conclusions to accept. In determining whether to use the percentage of Blacks challenged in the process of jury selection or to use the percentage of Blacks actually serving in the resulting juries, the Court finds that previous cases under *Swain* have focused on the average racial composition of petit juries in determining whether peremptory strikes of Blacks violated the Equal Protection Clause. It first began in *Swain* where the Court looked at the result that *no Negroes* had *served* on a petit jury in that county for as long as anyone could remember. *See Swain,* 380 U.S. at 223–24, 85 S.Ct. at 837. The Fifth Circuit has also looked to the aggregate resulting juries when it considers the use of peremptory challenges against Blacks. Although the Fifth Circuit in *Pearson* stated that it did not read *Swain* to require the government's use of its challenges 100% of the time to pose a proper claim, *see Pearson,* 448 F.2d at 1217, that Court also instructed that a defendant should check and analyze the race of the defendants, the *final composition of the petit jury,* and the manner in which each side exercised its peremptory challenges. *Id.* (emphasis added). The courts examine how many Blacks actually serve on juries regardless of how many black veniremen there are. *Id.* at 1217 n. 25. Further, the Fifth Circuit stated in *United States v. Carlton* that it had previously held that the exercise of peremptory challenges resulting in an absence of Negroes on the jury in a particular case is not improper since the presumption is that the prosecutor is using his challenges to obtain a fair and impartial jury. *Carlton,* 456 F.2d at 208. But where the "regular practice or custom involving the use of peremptory challenges *results* in an *effective disenfranchisement* of a particular class of persons from *serving* on petit ju-

---

2. Evidence of peremptory challenges against Blacks for all prosecutors was 79.3% and evidence for Peters as leading prosecutor was 76.5%.

ries ... the Constitution may well dictate a different result." *Id.* (emphasis added). The court uses the term "disenfranchise blacks from traverse juries" in criminal trials to note that it addresses a *Swain* claim on the statistics of the composition of resulting juries.

The Court is strongly persuaded by the fact that other courts presented with statistics close to this Court's finding of 80% challenges against Blacks have rejected *Swain* claims. *See, e.g., United States v. Carter*, 528 F.2d 844, 848 (8th Cir.1975), *cert. denied* 425 U.S. 961, 96 S.Ct. 1745, 48 L.Ed.2d 206 (1976); *McKinney v. Walker*, 394 F.Supp. 1015, 1017–18 (D.S.C.1974); *United States v. McDaniels*, 379 F.Supp. 1243, 1248 (E.D.La.1974). In *United States v. Carter*, the Eighth Circuit found that the government excluded 81% of Blacks potentially available to serve on petit juries during the year 1974. The Court stated that in over half of the thirteen cases involving only black defendants, there were in fact one or more black jurors accepted; therefore, it was difficult for the Court to conclude that the prosecutor was systematically excluding Blacks from juries and for reasons wholly unrelated to the outcome of the particular case on trial. *Carter*, 528 F.2d at 850. In *McKinney v. Walker*, the district court found that Blacks constituted 11.7% of veniremen called in trials of white defendants, Blacks made up 3.7% of the jurors sitting in judgment of white defendants, Blacks constituted 10.6% of the veniremen called for trial of black defendants and Blacks made up 2.6% of the jurors sitting in judgment of black defendants. Despite the fact that 82% of potential black jurors were struck in the process, the court still looked at the percentage of the Blacks actually serving on the juries to find no equal protection violation. *McKinney*, 394 F.Supp. at 1018, 1020. In *United States v. McDaniels*, Judge Alvin Rubin found that 68.9% of the peremptory challenges used by the government in cases studied were directed to black persons, but notwithstanding this, the juries actually hearing cases remained relatively representative with at least 22.8% of the jurors being black. *McDan-*

*iels*, 379 F.Supp. at 1244. The black voting age population was found to be 26.4% in that area. The court found that the data did not support a charge that the pattern violated equal protection of the Fifth Amendment, which is the same as equal protection under the Fourteenth Amendment. The court stated:

> The defendant here has failed to show the "systematic exclusion" of Blacks prohibited by the Fifth Amendment as interpreted in *Swain* and *Pearson*. Blacks have served on juries in the Eastern District of Louisiana in only slightly less than the proportion that they register to vote, and the United States Attorney's Office has let too many opportunities to challenge black jurors pass to permit the conclusion that the assistants use their challenges systematically to exclude Blacks.

*Id.* at 1248. Although the court specifically did not find a constitutional violation, the court chose to exercise its power under Rule 33 of the Federal Rules of Criminal Procedure to grant a new trial because the judge believed that given all the circumstances of the case the trial was less than fair. *Id.* at 1249–50. Several cases in which a prima facie *Swain* case was not established have also noted that Blacks had served on the jury in each particular trial. *E.g., Thomas v. Wainwright*, 788 F.2d 684, 689 (11th Cir.1986); *United States v. Hawkins*, 781 F.2d 1483, 1487 (11th Cir.1986). This supports the position that the courts were result-oriented.

The Eleventh Circuit in *United States v. David*, 803 F.2d 1567, 1571 (11th Cir.1986) held that the decision in *Batson* has established a new standard in this regard.

> *Batson* rejects the view in *Swain* that the Equal Protection Clause only requires that black citizens not be deprived of jury service by being systematically excluded from petit juries; *Batson* rests on a rationale that blacks are entitled not to be struck for racial reasons, and black defendants are entitled to be tried in a system free of racially exclusionary practices. This represents more than a group entitlement not to be entirely excluded from participation. Rather, under

*Batson* the striking of one black juror for a racial reason violates the Equal Protection Clause, even where other black jurors are seated, and even when valid reasons for the striking of some black jurors are shown.

*Id.* *Batson* establishes that the courts now look at the selection or challenging process rather than just the resulting juries for a determination of systematic exclusion. *Batson,* 476 U.S. at 85–87, 106 S.Ct. at 1717, 90 L.Ed.2d at 80–81. Since this is a new evidentiary standard by which to determine a claim under the Fourteenth Amendment for systematic exclusion, this Court may not apply it retroactively to this case. *See Allen v. Hardy,* 478 U.S. at ——, 106 S.Ct. at 2880–82, 92 L.Ed.2d at 205–06.

The results test appears to be the most appropriate test under the *Swain* line of cases for analyzing data regarding systematic exclusion of Blacks from juries. By accepting the results percentages as opposed to challenge process percentages, the Court finds that the practices of District Attorney Peters and the District Attorney's Office are to accept Blacks so that Blacks have served on juries to an extent to comprise 29% of the juries. Therefore, Blacks have not been disenfranchised from serving on juries in the First Judicial District of the Seventh Circuit Court District, and there is no historical violation of the Equal Protection Clause. Historic systematic exclusion of Blacks has been effectively rebutted, so the Petitioner fails on this first prong of the case.

The prosecutor did not directly address his testimony to rebutting the second prong that any exclusion continued into the Petitioner's trial. Although the State did not think it was putting on rebuttal proof because of a mistaken belief that the Court would bifurcate the hearing, the Court does have enough evidence and rebuttal proof from the record to rule on this second prong. The Court has found that Peters, by his testimony and by the notations contained in the juror list sheets, expressed racially neutral reasons for challenging five of the seven Blacks who were peremp-

torily struck in Edwards' trial. He has used these same reasons to strike white potential jurors in this case as well as in other cases. In Edwards' trial one Black was not challenged by the State and would have been a juror in the case but for peremptory challenge of him by the defense. Furthermore, the present case is distinguishable from a recent case, *Garrett v. Morris,* 815 F.2d 509 (8th Cir.1987), urged by the Petitioner. The court in *Garrett* held that when a prosecutor volunteers his reasons for striking Blacks, he takes the case out of the analysis of *Swain.* *Garrett,* 815 F.2d at 512. In the present case, however, Peters did *not volunteer* his reasons for the strikes at trial and make them a part of the trial record; he only expressed his reasons when compelled by deposition and by being called as a witness. Moreover, the court in *Garrett* found that the prosecutor had not stated racially neutral reasons for striking black jurors in that case. This Court finds that Peters has sufficiently stated racially neutral reasons for striking five Blacks in Edwards' trial. The Petitioner has not shown that any systematic exclusion based on race continued into the selection of Edwards' jury; therefore, the Petitioner does not prevail on his claim of systematic exclusion of Blacks from juries by use of the prosecutor's peremptory challenges in violation of the Fourteenth Amendment Equal Protection Clause.

### CONCLUSION

From the foregoing analysis, the Court finds that on the presentation of Petitioner's statistics, Petitioner did meet a prima facie case under *Swain.* But the State in effect rebutted the prima facie case with additional and more persuasive statistics that Blacks have not been systematically excluded or disenfranchised from serving on petit juries within the First Judicial District of the Seventh Circuit Court District in Mississippi. The State rebutted an historical pattern of systematic exclusion as well as continuation of any pattern into Leo Edwards' trial itself. On this basis, the Petitioner did not prove his claim under the Fourteenth Amendment of systematic exclusion of Blacks from trials by use of the

prosecutor's peremptory challenges. Therefore, the Court denies Leo Edwards' Petition for Writ of Habeas Corpus.

Accordingly, it is ordered that the Petition for Writ of Habeas Corpus be, and hereby is, denied. It is further ordered that the stay of execution heretofore entered by the Court in this action is vacated.