**Rudy Ramos ESQUIVEL,
Petitioner-Appellee,**

v.

**O.L. McCOTTER, Director, Texas
Department of Corrections,
Respondent-Appellant.**

No. 86–2411.

United States Court of Appeals,
Fifth Circuit.

June 7, 1986.

J. Thomas Sullivan, Southern Methodist University Appellate Clinic, School of Law, Dallas, Tex., for respondent-appellant.

Jim Mattox, Atty. Gen., Paula Offenhauser, Asst. Atty. Gen., Austin, Tex., for petitioner-appellee.

Before REAVLEY, POLITZ and HIGGINBOTHAM, Circuit Judges.

POLITZ, Circuit Judge:

This matter is before the court on the motion of O.L. McCotter, Director, Texas Department of Corrections, asking that we vacate the order entered by the district court for the Southern District of Texas on June 6, 1986, staying the execution of Rudy Ramos Esquivel scheduled for June 9, 1986. After considering the filings by the parties, the pertinent parts of the state trial record, the prior opinions of the courts, the latest order of the Texas Court of Criminal Appeals, and the oral arguments of counsel in a conference call with the court, we conclude that the trial court erred and abused its discretion in entering the stay order. Accordingly, for the reasons assigned, we vacate and annul that order.

Esquivel was sentenced to death by a jury for the murder of a police officer. His conviction was affirmed on appeal by the Texas Court of Criminal Appeals, 595 S.W.2d 516 (1980), and the Supreme Court denied certiorari, 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980). State habeas relief was denied after an evidentiary hearing. Esquivel then sought federal habeas relief, 28 U.S.C. § 2254. Following an evidentiary hearing before a magistrate, the district court denied the writ. We affirmed. *Esquivel v. McCotter,* 777 F.2d 956 (5th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1662, 90 L.Ed.2d 204 (1986).

On June 5, 1986, Esquivel filed an application for stay of execution and an original application for writ of habeas corpus with the Texas Court of Criminal Appeals. He therein alleged that the State of Texas

exercised its peremptory challenges in such a manner as to systematically exclude Hispanics from the jury in violation of *Batson v. Kentucky*, 476 U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), rendered by the Supreme Court on April 30, 1986. On June 6, 1986, the Texas Court of Criminal Appeals denied the stay of execution and all relief requested in the writ application declaring:

> The Court is of the opinion that no prima facie showing has been made by applicant of any violation of *Batson v. Kentucky*, supra. Additionally, an examination of the transcript in the case reveals that no Spanish-surnamed individuals were peremptorily challenged by the State at applicant's trial.

The sole allegation of constitutional infirmity asserted by Esquivel in his present application for federal habeas relief, his second such application, is that prospective jurors of Mexican-American descent and those with Spanish surnames were excluded from the petit jury by the state's selective use of its peremptory challenges, in violation of the teachings of *Batson v. Kentucky*. Petitioner's counsel informs the court that this allegation is "[b]ased on information received by counsel from Jim Keegan, attorney employed by the Staff Counsel for Inmates at the Texas Department of Corrections," and on an affidavit of Esquivel filed under separate cover and not seen by counsel prior to the filing of the state and federal habeas applications. Esquivel's affidavit contains the general statement that the state struck prospective jurors with Spanish surnames. No details were given.[1]

The allegations in the petition and the general attestation in Esquivel's affidavit are not supported by the record of the state trial, as found by the Texas Court of Criminal Appeals, and as confirmed in an examination of the state trial transcript by a member of this panel. The state exercised 11 of its 15 peremptory challenges. None was of a person with a Spanish surname. The record reflects that all but two listed a religious preference of Protestant.[2] The defendant exercised all 15 of his challenges, none having been used against a person with a Spanish surname. Just over a score of the venire members were excused for cause, either at the request of the state or of the defendant, or by the court *sua sponte*. Three bore Spanish surames.

The factual finding by the Court of Criminal Appeals that no Spanish-surnamed individual was peremptorily challenged by the state is presumed to be correct. 28 U.S.C. § 2254(d); *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

■ Were we to conclude that the rule of *Batson v. Kentucky* is to be retroactively applied to collateral federal proceedings, we would agree with the Texas Court of Criminal Appeals that Esquivel has failed to make a prima facie showing of a violation that would warrant an evidentiary hearing or any other relief. The application contains mere conclusionary allegations, supported only by compounded hearsay and by an inadequate, generalized affidavit. The application, read in the most liberal light, would be inadequate to trigger the *Batson v. Kentucky* rubric, if it were applicable.

Counsel's explanation that the lack of specificity in the application, as well as the speculation and surmise apparent therein, was caused by non-access to the trial transcript prior to filing the state and federal applications. That explanation is inadequate for two reasons. The record was available. The claimed non-access was ac-

---

1. The entirety of the text of the affidavit declares:

> My name is Rudy Ramos Esquivel, and in 1978 I was convicted in Harris County, Texas under Cause No. 280748, of Capital Murder. There were Hispanics and/or Mexican Americans on the jury panel from which the jury which tried and convicted me was selected, but all the Hispanics and/or Mexican Americans were stricken by the State. There were no Hispanics and/or Mexican Americans on the jury which tried and convicted me.

2. The record before us contains no information on one of the two, Emma T. Huddleston.

tually a matter of inconvenience caused or exacerbated by geographic separation and the eleventh-hour undertaking of representation by Esquivel's present counsel. Secondly, the record belies the allegation of systematic exclusion of Hispanics by the state. No Spanish-surnamed venireman was peremptorily challenged. The three who were excused were excused for cause.

■ We conclude, however, that *Batson v. Kentucky* is not to be given retroactive application in federal habeas proceedings. Although the test for retroactive application of decisions to cases pending on direct appeal has been subject to recent modification, *see Shea v. Louisiana*, —— U.S. ——, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985); *United States v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), the standard for retroactive application to cases on collateral review has remains as elucidated in *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), and *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). *Solem v. Stumes*, 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984).[3]

"The criteria guiding resolution of the [retroactivity] question [in collateral proceedings] implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." *Stovall v. Denno*, 388 U.S. at 297, 87 S.Ct. at 1970.

In light of these factors, "[c]omplete retroactive effect is most appropriate where a new constitutional principle is designed to enhance the accuracy of criminal trials." *Solem*, 465 U.S. at 643, 104 S.Ct. at 1342, 79 L.Ed.2d at 587 (*citing Williams v. United States*, 401 U.S. 646, 653 & n. 6, 91 S.Ct. 1148, 1152 & n. 6, 28 L.Ed.2d 388 (1971) (plurality opinion)). The core premises of *Batson* are not involved with enhancing the truth-finding functions of the jury system. *Batson* primarily is concerned with the role of discrete minorities in the polity of the United States and with "safeguarding a person accused of crime against the arbitrary exercise of power by prosecutor or judge." *Batson*, —— U.S. ——, ——, 106 S.Ct. 1712, 1717, 90 L.Ed.2d 69, 81.

In support of this latter principle, the Court cites *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), which it discusses in detail in footnote 8, *Batson*, —— U.S. ——, 106 S.Ct. at 1717 n. 8, 90 L.Ed.2d at 81 n. 8. The concerns noted are with the allocation of power and function between judge and jury. *Ducan* was held not to apply retroactively in *DeStefano v. Woods*, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968). Likewise, *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), forbidding systematic exclusion of women from jury panels, was held not to apply retroactively in *Daniel v. Louisiana*, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975). *See Batson*, —— U.S. at ——, 106 S.Ct. at 1725, 90 L.Ed.2d at 90–91 (White, J., concurring). A telling indication that *Batson* does not implicate the enhancement of the accuracy of criminal trials is reflected by the fact that it was decided under the equal protection clause. The Court expressly pretermitted consideration of Batson's sixth amendment claims. *Id.* at —— n. 4, 106 S.Ct. at 1716 N. 4, 90 L.Ed.2d at 79 n. 4.

In considering the *Stovall* reliance factor, the Court has "looked primarily to whether law enforcement authorities and state courts have justifiably relied on a prior rule of law said to be different from that announced by the decision whose retroactivity is at issue." *Solem*, 465 U.S. at 645–46, 104 S.Ct. at 1343, 79 L.Ed.2d at 589. This test is frequently shortened to an inquiry whether the new rule is "a clear break with the past." *Id.* at 646, 104 S.Ct. at 1343, 79 L.Ed.2d at 589. *Batson* expressly overrules *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). It qualifies as "a clear break with the past" which should not be applied retroactively.

3. The Linkletter-Stovall testa are not applicable to cases announcing a new rule concerning fundamental guarantee like double jeopardy or the eighth amendments's prohibitions and limitations on capital punishment. *See Jones v. Thigpen*, 741 F.2d 805, 810 (5th Cir.1984).

*Batson,* — U.S. at —, 106 S.Ct. at 1725 n. 25, 90 L.Ed.2d at 90 n. 25.

The disruptive effect on the administration of justice requires scant comment. Nearly 100 of the prisoners on death row in Texas belong to recognized minorities.

Four justices expressly stated that *Batson v. Kentucky* should not be given retroactive effect. The other five justices did not address the issue. Applying well-settled precedent, we are persuaded that *Batson v. Kentucky* should be given prospective application only in federal habeas proceedings.

Esquivel's application for habeas relief is without merit. No relief may be granted. Accordingly, no stay pending consideration of habeas relief is appropriate. The order of the district court staying the execution of Rudy Ramos Esquivel is VACATED.