Connie Ray EVANS, Petitioner-Appellant, Cross-Appellee,

v.

Morris THIGPEN, Commissioner, Mississippi Department of Corrections, Respondent-Appellee, Cross-Appellant.

No. 86–4331.

United States Court of Appeals, Fifth Circuit.

Jan. 22, 1987.

Rehearing and Rehearing En Banc Denied March 12, 1987.

Steven Latimer, East Brunswick, N.J., Shirley Payne, Horn & Payne, Jackson, Miss., for petitioner-appellant, cross-appellee.

Amy D. Whitten, Marvin L. White, Jr., Jackson, Miss., for respondent-appellee, cross-appellant.

Before GEE, RANDALL and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Connie Ray Evans appeals the district court's denial of his habeas petition contesting the sentence of death imposed in his conviction for murder. We find no error and affirm.

## I.

Evans pleaded guilty to capital murder and his case proceeded directly to the pen-

alty phase of Mississippi's bifurcated scheme. The jury recommended the death penalty, finding that the state had proved four statutory aggravating circumstances that outweighed any mitigating circumstances. The sentence was upheld on direct appeal, and the Mississippi Supreme Court denied the petitioner's application for error coram nobis relief. Evans' application for federal habeas relief was denied by the district court. *Evans v. Thigpen,* 631 F.Supp. 274 (S.D.Miss.1986). Evans now appeals.

The murder in this case occurred during an armed robbery of a neighborhood grocery store in Jackson, Mississippi. Evans acted as a lookout while his accomplice, Alfonso Artis, entered the grocery store with a .38 caliber revolver. The accomplice made the store clerk, Arun Pahwa, get on his knees behind the counter. Evans then entered the store, received the handgun from Artis and stood over Pahwa with the cocked revolver pointed at Pahwa's head. When Artis could not get the cash register drawer open, he ordered Pahwa to get up and and open the cash register; Pahwa was then forced back into a kneeling position. Evans and Artis collected approximately $140 from the cash register and Pahwa's pockets. As Artis turned to leave, Evans shot the kneeling Pahwa in the back of his head from a distance of approximately three or four feet. Evans and Artis fled the scene of the crime.

Artis was apprehended by police the next day and Evans turned himself in to the police seventeen days later. Petitioner confessed that he shot the victim because "the man knew me and I did not want him to identify me."[1]

## II.

### A. Aggravating Factors

The jury found that the state had proved four statutory aggravating circumstances:

(1) that the capital offense was "especially heinous, atrocious and cruel"; (2) that the capital offense was committed by a person "under sentence of imprisonment"; (3) that the capital offense was committed "for the purpose of avoiding or preventing a lawful arrest"; and (4) that the capital offense was committed while the defendant was engaged in committing a robbery. Evans argues that all four findings should be overturned.

The district court's thorough opinion persuasively rejects Evans' arguments to overturn the first three aggravating circumstances listed above. We also reject these arguments for the reasons stated by the district court. *See Evans,* 631 F.Supp. at 283–84.

The fourth aggravating circumstance was perhaps the most clearly established: that the murder was committed during the course of a robbery. Evans now argues that this aggravating circumstance fails to adequately narrow the class of persons eligible for the death penalty because it simply duplicates an element of the crime. See *Collins v. Lockhart,* 754 F.2d 258 (8th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985). We rejected this argument in *Wingo v. Blackburn,* 783 F.2d 1046, 1051 (5th Cir.1986).

Although a single aggravating circumstance is sufficient to support a death sentence, *Watson v. Blackburn,* 756 F.2d 1055, 1058 (5th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 2259, 93 L.Ed.2d 703 (1986), we conclude that all four aggravating circumstances were established in this case. This claim is therefore without merit.

### B. Evidentiary Rulings

Evans next alleges that the trial court improperly allowed the following evidence

---

[1]. Evans recanted this portion of his confession at the sentencing hearing. Evans testified that he did not intend to shoot the victim, but fired because the victim made a slight movement of his knees when a telephone rang. Nevertheless, the jury found that Evans shot the victim for the purpose of avoiding arrest.

to be admitted during the sentencing stage of the trial: (1) nine color slides of the victim of the homicide; (2) the spent bullet and certain personal belongings of the victim; (3) testimony of a pathologist and investigating officer with respect to the cause of death and the scene of the crime; and (4) testimony of the victim's brother. Evans argues that this evidence was not relevant in the sentencing phase of the trial because of his previous guilty plea. He also argues that the introduction of this evidence created "an atmosphere in which it was impossible" to get a fair trial.

"In reviewing state evidentiary rulings, our role is limited to determining whether a trial judge's error is so extreme that it constituted denial of fundamental fairness." *Mattheson v. King,* 751 F.2d 1432, 1445 (5th Cir.1985), *cert. dismissed,* —— U.S. ——, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986). We do not believe that the admission of these four categories of evidence denied Evans fundamental fairness.

■ All of these items were relevant to the aggravating circumstances the state was required to prove in its capital case. Items one through three established the crime scene and other particulars of the crime; they were pertinent to the state's contention that the execution-style murder was heinous and committed during the course of a robbery. We agree with the district court that admission of this evidence was probably not in error "at all, much less error which would justify habeas relief under the standard set forth in *Mattheson, supra.*" *Evans,* 631 F.Supp at 288.

■ The victim's brother, Dr. Balder Raj Pahwa, identified the victim's body from the photographs. His testimony, although emotional, was brief and did not pervade the sentencing hearing. We are persuaded that his testimony did not deny Evans a fundamentally fair trial.

■ Evans also argues that the trial court erred in refusing to let Reverend Owens testify as an expert on the "Christian tenets of mercy." We agree with the district court that Reverend Owens' testimony would have consisted of an "abstract review of Biblical teachings" and was not related to the petitioner or the crime he committed in this case. *Evans,* 631 F.Supp. at 286. Exclusion of this testimony therefore did not deny Evans fundamental fairness.

### C. Prosecutor's Closing Remarks

Evans complains of five remarks made by the prosecutor during closing argument: (1) references to the consequences of a sentence of "life imprisonment";[2] (2) negative comments regarding the possible rehabilitation of the defendant; (3) a characterization of the crime as the "most horrible crime I can imagine"; (4) the reading to the jury portions of a note in evidence written by petitioner to his accomplice; and (5) remarks that petitioner was not entitled to "mercy." Only the first of these five comments merits discussion; for reasons stated in the district court's careful opinion, none of the remaining four comments warrant relief. *See Evans,* 631 F.Supp. at 290–92.

2. With respect to the consequences of a sentence of life imprisonment, the prosecutor stated:

> You can send him to life imprisonment, but that's ... just your sentence. And you can do something else that they said; you can decide that a sentence of life imprisonment is the way to stop crime. Did you hear the preposterous statement that the defense attorney made. The way to stop crime is to catch people and put them in prison. There's a man that was put in prison, sentenced to prison on three separate crimes, and within two years and a couple of months he killed a man. And he says that's the way to stop crime. Sentence them to prison and we'll stop crime. Hogwash. Nothing is going to stop him from crime other than the sentence we are requesting. He's already shown you that. That's fact.... [R. 446–447]

> * * * * * *

> What's the first thing he did· when he ... found out what he was fixing to face? Well, tried and true jurors, when he was fixing to go to the penitentiary, escape. Think about that and he tells you the death penalty isn't a deterrent. [R. 449]

Evans argues that he was deprived of a fundamentally fair sentencing hearing when the prosecutor stated to the jury in closing argument that "[y]ou can send him to life imprisonment, but that's just your sentence." Petitioner relies on *Caldwell v. Mississippi* which held that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." *Caldwell v. Mississippi,* 472 U.S. 320, 328, 329, 105 S.Ct. 2633, 2639, 86 L.Ed.2d 231, 239 (1985).

■ *Caldwell,* however, is inapplicable to the instant case. In *Caldwell,* the prosecutor told the jury that "your decision is not the final decision.... Your job is reviewable." *Caldwell,* 472 U.S. at 325, 105 S.Ct. at 2637, 86 L.Ed.2d at 237. When read in context, the instant case is quite different: the prosecutor's statement referred to the petitioner's past proclivity to escape from prison, not the possibility of parole or reversal on appeal. The prosecutor argued that based on Evans' past record of escape, "nothing is going to stop him from crime other than the [death] sentence we are requesting." The reference to the fact that Evans' might not serve a life sentence because of his history of escape presents no constitutional error. See *Brooks v. Kemp,* 762 F.2d 1383, 1411 n. 46 (11th Cir.1985) (not improper to raise the possibility of prison escape and the potential for future victims), *vacated on other grounds,* —— U.S. ——, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986).

**D. Jury Instruction on "Mercy"**

■ Petitioner argues that the trial court erred in refusing to allow an instruction on the issue of mercy.[3] The proffered instruction was unnecessary, however, be-

cause of the two related instructions given by the trial court. The court told the jury that:

> Even if you find the existence of one, two, or three or more aggravating circumstances, you still can conclude that the circumstances are insufficient to warrant death, and you may impose a sentence of life imprisonment.

The trial judge also instructed the jury that:

> You are not required to find any mitigating circumstance in order to make a recommendation of mercy that is binding on the trial court....

These two instructions satisfied the court's requirement to clearly inform the jury of its option to return a verdict of life imprisonment. *Chenault v. Stynchombe,* 581 F.2d 444, 448 (5th Cir.1978).

**E. *Witherspoon v. Illinois***

■ The petitioner contends that the exclusion for cause of prospective juror Mary Rouchon violated *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). After stating that she was positive that she could not return a verdict recommending the death penalty, Ms. Rouchon vacillated in expressing her scruples about the death penalty. Despite Ms. Rouchon's vacillations, we believe her exclusion from the capital sentencing jury was fairly supported by the record. *Wainwright v. Witt,* 469 U.S. 412, 434, 105 S.Ct. 844, 857, 83 L.Ed.2d 841, 858 (1985). Ms. Rouchon expressed "very strong feelings" about the death penalty and at one point told the trial judge that she could not follow the law or consider the death penalty where a killing in the course of a robbery was involved. In light of the presumption of correctness due the trial judge's findings under 28 U.S.C. § 2254(d), we find no error on this point.

---

**3.** The trial court refused to give instruction D–8 which provided:

The Court instructs the jury that even if you find that aggravating circumstances outweigh

the mitigating circumstances, you may still recommend mercy and sentence the defendant to life imprisonment.

### F. Discriminatory Application of Death Penalty

Petitioner asserts that Mississippi is more likely to impose the death penalty if the defendant is black or if the victim is white. Relying on *McCleskey v. Kemp*, 753 F.2d 877 (11th Cir.1985) (en banc), *cert. granted*, —— U.S. ——, 106 S.Ct. 3331, 92 L.Ed.2d 737 (1986), he contends that this disparate treatment of blacks who are accused of murdering caucasians deprives him of equal protection of the law.

At the outset we note that the district court procedurally barred this claim because Evans did not address the issue in either the Mississippi trial court or the state Supreme Court and he failed to show "cause and prejudice" to explain the default. *See Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Assuming, without deciding, that the Supreme Court's intervening decision to grant *certiorari* in *McCleskey* would satisfy the "cause and prejudice" standard of *Engle v. Isaac*, we find that Evans' claim cannot prevail on the merits. The statistical evidence upon which he relies remains inadequate under current Fifth Circuit law to show that he has been the victim of discrimination. *Wicker v. McCotter*, 798 F.2d 155, 157–58 (5th Cir.1986); *Prejean v. Maggio*, 765 F.2d 482, 486 (5th Cir.1985). The fact that the Supreme Court has granted *certiorari* in *McCleskey* does not alter the authority of our prior decisions. *Wicker*, 798 F.2d at 157–58. *See also Michael Wayne Evans v. McCotter*, 805 F.2d 1210, 1212 (5th Cir.1986).

### G. Cross Appeal

Our disposition of petitioner's appeal makes it unnecessary for us to consider the state's cross-appeal.

### CONCLUSION

We affirm the district court's denial of habeas relief to the petitioner. The stay of execution entered by the district court pending appeal is vacated.