Connie Ray EVANS, Petitioner,

v.

Morris THIGPEN, Commissioner, Mississippi Department of Corrections, Respondent.

Civ. A. No. J87–0081(B).

United States District Court,
S.D. Mississippi,
Jackson Division.

June 26, 1987.

Shirley Payne, Jackson, Miss., Stephen M. Latimer, Bloomfield, N.J., for petitioner.

Marvin L. White, Jr., Atty. General's Office, Jackson, Miss., for respondent.

## MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

This matter is now before the Court upon the Petitioner's second petition for federal habeas corpus relief under 28 U.S.C. § 2254. Petitioner Evans pled guilty to the capital murder of a grocery store clerk in October of 1981, and the court proceeded to hold a trial on the sole issue of what sentence he should receive. Evans was sentenced to death by a jury verdict. The facts of the crime and previous court rulings are set out in prior opinions.[1] This Court will relate the facts only as they touch on the issues presented here.

Petitioner now asserts two claims in his second petition for habeas corpus relief:

---

1. *See Evans v. Thigpen,* 809 F.2d 239 (5th Cir. 1987); *Evans v. Thigpen,* 631 F.Supp. 274 (S.D. Miss.1986); *Evans v. State,* 485 So.2d 276 (Miss. 1986); *Evans v. State,* 441 So.2d 520 (Miss. 1983); *Evans v. State,* 422 So.2d 737 (Miss. 1982).

(1) systematic exclusions of Blacks from the jury which sentenced him and from prior juries, and

(2) ineffective assistance of counsel at trial and on appeal.

■ Second or successive habeas corpus petitions are governed by 28 U.S.C. § 2254 and Rule 9(b) of the Rules Governing Section § 2254 cases. Rule 9(b) provides:

A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits, or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in·a prior petition constituted an abuse of the writ.

The primary responsibility for deciding whether a petitioner has abused the writ is with the district court. *Jones v. Estelle*, 722 F.2d 159, 165 (5th Cir.1983). Abuse of the writ may be pleaded by the state or raised by the district court *sua sponte*. *Daniels v. Blackburn*, 763 F.2d 705, 707 (5th Cir.1985). Once abuse of the writ is raised, the petitioner has the burden of proving by a preponderance of the evidence that he has not abused the writ. *Id.;* *Jones*, 722 F.2d at 164. The State raised this issue in a motion to dismiss the petition. Petitioner responded by asserting in two affidavits of his previous attorneys and in a portion of his brief in support of the petition that he had not abused the writ. Therefore, Petitioner Evans has received the proper notice to rebut evidence of abuse of the writ. *See Urdy v. McCotter*, 773 F.2d 652, 656–57 (5th Cir.1985) (adequate notice must inform petitioner that dismissal based on an abuse of the writ is being considered).

The two issues presented in this second federal habeas corpus petition were not wholly asserted in the first federal petition before this Court. During the pendency of the first petition for writ of habeas corpus the Petitioner gained more factual information by which to assert these two claims and presented them before the Mississippi Supreme Court in a Petition for Writ of Error Coram Nobis. The Petitioner states by affidavit of counsel that he intended to exhaust his state judicial remedies and, if the state court denied these remedies, then Petitioner intended to join these issues with the first federal petition by amendment. The state court denied these claims on February 19, 1986. *See Evans v. State*, 485 So.2d 276 (Miss.1986). The Petitioner then filed a petition for writ of certiorari to the Mississippi Supreme Court with the United States Supreme Court. The high court denied certiorari on June 9, 1986. *Evans v. Mississippi*, 476 U.S. 1178, 106 S.Ct. 2908, 90 L.Ed.2d 994 (1986). The Petitioner asserts he intended to join these two claims with the first federal petition, but this Court denied the first petition before he could assert these additional claims. This Court rendered its decision on March 21, 1986, one month after the state's decision on these claims. *See Evans v. Thigpen*, 631 F.Supp. 274 (S.D.Miss.1986). Petitioner proceeded to appeal the denial of the federal habeas relief to the Fifth Circuit but denial of this first petition was affirmed by the United States Court of Appeals for the Fifth Circuit on January 22, 1987. *See Evans v. Thigpen*, 809 F.2d 239 (5th Cir.1987). A rehearing petition was denied on March 12, 1987.

■ Petitioner has now chosen to raise the claims of systematic exclusion of black potential jurors from juries and ineffective assistance of counsel in this second habeas corpus petition. It is established as a general rule that the piecemeal presentation of post-conviction attacks on confinement cannot be tolerated; consideration of the merits of successive petitions for habeas relief must be limited to those cases in which there is a good reason for the petitioner's failure to raise all of his claims at one time. *Daniels*, 763 F.2d at 706. The proper inquiry in determining whether a habeas petitioner has abused the writ by failing to raise claims in a prior federal habeas petition is not whether the petitioner intended to waive the claims, but "whether he withheld them without legal excuse." *Id.* at 707. The Fifth Circuit has held, however, that a "petitioner may assert a new claim

in a successive petition so long as it is based on facts or legal theories about which [the petitioner] had no knowledge when prosecuting [the petitioner's] prior habeas petition." *Urdy*, 773 F.2d at 655; *Jones*, 722 F.2d at 163. In this case the Petitioner had knowledge of these two claims at the time his prior federal petition was pending. Petitioner is presently represented by the same counsel that represented him on his first habeas corpus petition.

The Fifth Circuit has held that the sole fact that new claims were unexhausted when the earlier federal writ was prosecuted will not automatically excuse their omission. *Rudolph v. Blackburn*, 750 F.2d 302, 305 (5th Cir.1984); *Jones*, 722 F.2d at 162, 168. This Court recognizes, however, that Petitioner Evans intended to present the two claims in his first petition by amendment, but failed to act promptly enough to amend the first petition after he had exhausted them in the state court. The Petitioner was attempting to comport with the exhaustion requirement of Section 2254(b). Even though the Petitioner had some factual knowledge on which to base these claims in the prior proceeding, this Court finds that counsel's good-faith efforts to join them to the first petition presents a justifiable reason for failure to include them in the first petition. The affidavits of counsel establish that Petitioner did not act with intent to "vex, harass, or delay." *See Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). The Petitioner did not deliberately withhold the newly asserted grounds from the earlier application. The Court finds that this is not a proper situation in which to find "abuse of the writ." *See Paprskar v. Estelle*, 612 F.2d 1003, 1007 (5th Cir.1980).

The State argues in its response to the Petition that the two claims Evans asserts are procedurally barred. Petitioner filed his second state post-conviction petition on July 12, 1985, under the Uniform Post–Conviction Collateral Relief Act, *Miss.Code Ann.* §§ 99–39–1, et seq. (Supp.1984), with the Mississippi Supreme Court. The issues raised were the same ones as now presented here, systematic exclusion of Blacks and ineffective assistance of counsel. On Feb-

ruary 19, 1986, the Mississippi Supreme Court denied relief by holding that the issues raised were procedurally barred. *Evans*, 485 So.2d at 281–82. As to the claim under *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), for systematic exclusion of Blacks from juries, the Mississippi Supreme Court noted the length of the litigation and that three different sets of counsel had worked on the case. *Evans*, 485 So.2d at 282.

> Throughout all this litigation, including an application for leave to file petition for writ of error coram nobis on July 1, 1983, the application attempts to raise the question for the first time.
>
> We are of the opinion that under the Post–Conviction Relief Act and case law of this state, the claim is barred.

*Id.* In regard to the claim of ineffective assistance of counsel at trial and on appeal, the Mississippi court stated:

> Petitioner had the opportunity to raise the issue of ineffective assistance of counsel in his application for leave to file a petition for writ of error coram nobis on July 1, 1983. Although petitioner was represented by counsel different from trial counsel, the claim of ineffective assistance was not raised. We now look to see whether petitioner has satisfied the requirements of "cause" and "prejudice" in Section 99–39–21(4) and (5), and whether petitioner is deemed to have waived address of the issue of ineffective of assistance, since he has failed to raise the question when the opportunity presented itself.
>
> \* \* \* \* \* \*
>
> We are of the opinion that the "cause" provision in sub-section (4) has not been met.

*Id.* at 280–81. The Mississippi court invoked its procedural ground that a claim which had not been raised at trial or on appeal could not be raised absent a showing of cause and prejudice. *See Miss.Code Ann.* § 99–39–21(1) (Supp.1985).

 As previously held by this Court in the first habeas corpus petition, this Court will on federal habeas review honor the

state court's invocation of its procedural default rules unless the requisite showing of cause and actual prejudice has been made to explain the default. *Evans v. Thigpen,* 631 F.Supp. at 279; *see also Edwards v. Thigpen,* 595 F.Supp. 1271, 1277–79 (S.D.Miss.1984). The Court will therefore inquire into the cause for the failure to raise these claims earlier and the prejudice to the petitioner for this failure. *See Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).

## A. EXCLUSION OF BLACKS FROM JURY UNDER SWAIN

■ The Petitioner asserts that the prosecuting District Attorney, Ed Peters, systematically excludes Blacks from juries in violation of the Fourteenth Amendment. This case is to be controlled by *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Although the United States Supreme Court has recently adopted a new procedure and evidentiary standard for an exclusion claim such as this, *see Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Court has also announced that *Batson* is not to apply retroactively to cases pending federal habeas corpus review at the time of the decision, *Allen v. Hardy,* 478 U.S. 255, 258–61, 106 S.Ct. 2878, 2880, 2881, 92 L.Ed.2d 199, 204, 206 (1986), or to cases in which the appeals process has been completed, *see Griffith v. Kentucky,* 479 U.S. 314, ————–————, 107 S.Ct. 708, 715–16, 93 L.Ed. 2d 649, 661–62 (1987). Connie Ray Evans' conviction was final before the *Batson* decision was announced. Furthermore, the Fifth Circuit has held that *Batson* will not be applied retroactively in federal habeas corpus proceedings even in death penalty cases. *See, e.g., Smith v. McCotter,* 798 F.2d 129, 132 (5th Cir.1986); *Esquivel v. McCotter,* 791 F.2d 350, 352 (5th Cir.1986). Therefore we will apply the standard of *Swain* and cases following it since *Batson* will not be retroactive to this action.

The facts reveal that Petitioner Evans pled guilty to capital murder and a jury was selected to hear evidence and consider the question of sentence. After voir dire the venire consisted of 34 potential jurors: 21 Whites and 13 Blacks. The district attorney exercised 10 or 11 of his 12 peremptory strikes[2] and excluded 9 of the 13 Blacks from the venire. Thus, the prosecutor had one or two peremptory challenges remaining. Petitioner Evans exercised his peremptory challenges to exclude Whites. His sentencing jury was thus composed of 8 Whites and 4 Blacks. Petitioner did not raise the claim concerning exclusion of Blacks at the sentencing trial, nor on appeal or on the first state post-conviction collateral relief request. Section 99–39–21(1) of the Mississippi Code provides that failure of a prisoner to raise objections, defenses, claims, questions, issues for errors either on fact or law which are capable of determination at trial and/or on direct appeal shall constitute a waiver and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver. *Miss. Code Ann.* § 99–39–21(1) (Supp.1986).

The Court finds that the Petitioner has not shown sufficient "cause" for the failure to raise this claim earlier since the Petitioner had knowledge of the peremptory strikes and knowledge of what it took to establish a *Swain* violation at the time of trial and on appeal. *See Smith v. Murray,* 477 U.S. at 533, 106 S.Ct. at 2666, 91 L.Ed. 2d at 444 (defendant must show both "cause" for non-compliance with the state rule and "actual prejudice resulting from the alleged constitutional violation"); *Engle v. Isaac,* 456 U.S. at 130–35, 102 S.Ct. at 1573–75; *Wainwright v. Sykes,* 433 U.S. 72, 89–91, 97 S.Ct. 2497, 2507, 53 L.Ed.2d 594 (1977) (when procedural default bars state litigation of a constitutional claim, prisoner may not obtain federal habeas relief absent a showing of cause and actual prejudice).

The Petitioner claims his "cause" in not raising this issue earlier was that he did

2. There is conflicting evidence in the record whether the district attorney used one or two of his peremptory challenges to strike Whites from the venire.

not have the knowledge that District Attorney Ed Peters systematically excluded Blacks until an article appeared in the *Clarion Ledger* and a deposition for *Edwards v. Thigpen*, 682 F.Supp. 1374 (S.D. Miss.1987), was given in April of 1985. Petitioner asserts he did not believe he could maintain a successful claim without such evidence, therefore he did not raise the claim at trial. Petitioner fails to recognize that Leo Edwards, whose case on which Evans relies for any proof of systematic exclusion, likewise did not have the deposition when he first raised his claim at trial which was one year before Evans' trial. Yet Edwards and other criminal defendants have claimed improper peremptory challenges at trial and on appeal in cases prior to Evans' October, 1981, trial in the hopes they could gather the necessary information to succeed under the standard of *Swain v. Alabama*. Moreover, the Court has ruled that the deposition of Ed Peters established only a "philosophy" of exclusion, *see Edwards v. Thigpen*, J83–0566(B) (Order of January 21, 1987), but was not dispositive of any conduct or practice of systematic exclusion of Blacks from juries by use of the prosecutor's peremptory challenges. Therefore, Leo Edwards was required to introduce statistical evidence from court records over a period of time in order to try to prove his claim. This information and data from court records and from the District Attorney's Office records were equally open and available to Evans. Petitioner could have raised this claim of exclusion at trial or on appeal without reliance on Peters' deposition for *Edwards*.

Further, the Court finds that there has been no prejudice to Petitioner Evans because of this procedural default. Considering the substance of the claim, the Court finds that Petitioner has not suffered a *Swain* violation. *Swain v. Alabama* involved a claim of systematic practice of discrimination by use of peremptory challenges in the trial. A prima facie case of systematic exclusion of Blacks from juries by use of the prosecutor's peremptory challenges was first stated in *Swain.*

But when the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries, the Fourteenth Amendment claim takes on added significance. [citations omitted]. In these circumstances, given even the widest leeway to the operation of irrational but trial-related suspicions and antagonisms, it would appear that the purposes of the peremptory challenge are being perverted. If the State has not seen fit to leave a single Negro on any jury in a criminal case, the presumption protecting the prosecutor may well be overcome. Such proof might support a reasonable inference that Negroes are excluded from juries for reasons wholly unrelated to the outcome of a particular case on trial and that the peremptory system is being used to deny the Negro the same right and opportunity to participate in the administration of justice enjoyed by the white population. These ends the peremptory challenge is not designed to facilitate or justify.

*Swain*, 380 U.S. at 223–24, 85 S.Ct. at 837–38. The United States Supreme Court thus established that to make a prima facie case the defendant must present evidence of the prosecutor's systematic use of peremptory challenges against Blacks over a period of time. *Id.* at 227, 85 S.St. at 839. The Court in *Swain* had held in Section II that mere evidence of striking of Negroes on a particular case did not constitute a denial of equal protection of the laws. *Id.* at 221, 85 S.Ct. at 836. Thus, the court established that to present this claim, the petitioner must show that Blacks were systematically excluded in his particular case and also in past cases over a period of time.

The Eleventh Circuit in *Willis v. Zant*, 720 F.2d 1212 (11th Cir.1983), has announced guidelines for approaching a *Swain* claim. The court in *Willis* held that *Swain* is met where the prosecutor

had a systematic and intentional practice of excluding blacks from traverse juries

in criminal trials through the exercise of peremptory challenges, and that *this practice continued unabated in petitioner's trial.* The exclusion must have occurred "in case after case, whatever the circumstances, whatever the crime and whoever the defendant may be." *Swain,* 380 U.S. at 223, 85 S.Ct. at 837. Petitioner is not required to show that the prosecutor *always* struck *every* black venireman offered to him, *Pearson,* 448 F.2d at 1217, but the facts must manifestly show an intent on the part of the prosecutor to *disenfranchise* blacks from traverse juries in criminal trials in his circuit, "to deny the Negro the same right and opportunity to participate in the administration of justice enjoyed by the white population." *Swain,* 380 U.S. at 224, 85 S.Ct. at 838. The prosecutor's use of peremptory challenges in only a few trials is clearly insufficient to state a prima facie case, as would be a pattern of exclusion which occurred only a few weeks. In short, petitioner must marshal enough historical proof to overcome the presumption of propriety in which *Swain* clothes peremptory challenges....

*Willis,* 720 F.2d at 1220 (emphasis added). The Fifth Circuit in *United States v. Pearson,* 448 F.2d 1207 (5th Cir.1971), did state, however, that it did not read *Swain* "as meaning that the attack on the Government's use of its challenges must fail if the impermissible use is not exercised one hundred percent of the time." *Id.* at 1217. The Eleventh Circuit has further held in *United States v. Hawkins,* 781 F.2d 1483, 1487 (11th Cir.1986), that a defendant failed to make a prima facie showing that prospective jurors were excluded on the basis of race. The defendant failed to introduce any evidence of the prosecutor's past practice, and the court found it significant that the jury finally chosen had one black juror despite the fact the prosecutor had not used all his peremptory challenges. *Id.* Also, in *Thomas v. Wainwright,* 788 F.2d 684, 689 (11th Cir.1986), the Eleventh Circuit held that the allegation of fact concerning the exclusion of black jurors by peremptory challenges of the prosecutor

did not rise to the systematic exclusion of black jurors required by *Swain.* The court noted that a black juror was on the jury which decided both guilt and the advisory death sentence. *Id. See also Hampton v. Wyrick,* 606 F.2d 834, 835 (8th Cir.1979) (no prima facie case under *Swain* where jury included six blacks and petitioner introduced no evidence of exclusion beyond his own case).

Petitioner Evans has attempted to make his prima facie case for historic systematic exclusion of Blacks by utilizing the "philosophy" of Peters to exclude Blacks as interpreted in his deposition and by aligning his case with the proof brought out in an evidentiary hearing held in *Edwards v. Thigpen,* 682 F.Supp. 1374 (S.D.Miss.1987). In *Edwards* this Court found that the data presented by the petitioner (that nearly 80% of all the prosecutor's peremptory challenges were exercised against Blacks) established a prima facie case to overcome the presumption of propriety of the prosecutor's peremptory challenges under *Swain. Edwards,* 682 F.Supp. at 1383. This Court then examined the data and evidence of the State which rebutted petitioner Edwards' prima facie case. This Court was persuaded that courts had focused on the average final racial composition of petit juries in determining whether peremptory strikes of Blacks violated the Equal Protection Clause under *Swain. Id.* at 1383–86. The Court concluded that the fact that on an average 29% of jurors serving on petit juries were Blacks rebutted the prima facie case of systematic exclusion. Therefore, Blacks had not been effectively disenfranchised by the prosecutor's use of peremptory challenges. *Id.* at 1386. The Petitioner Evans has not shown systematic exclusion of Blacks over a period of time separate from the proof in *Edwards.* Although sufficient to be a prima facie case, this Court has held it to be insufficient to constitute systematic exclusion of Blacks from juries in violation of the Fourteenth Amendment. Furthermore, the Petitioner has not established that any purported systematic exclusion continued *unabated* to his trial. *See Willis v. Zant,* 720 F.2d at 1220. This Court will maintain its result-

oriented analysis of a claim for systematic exclusion of Blacks from juries by use of the prosecutor's peremptory challenges. This Court finds that four Blacks served on the jury which sentenced him and the prosecutor still had peremptories left by which to challenge some of those black jurors. Even if this Court should find a past practice of systematic exclusion, this Petitioner has not shown that it continued unabated through his trial. The Petitioner thus has not suffered an injury on which to base a *Swain* claim.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

■ Petitioner now asserts on this second federal habeas petition that he was rendered ineffective assistance of counsel at trial and on appeal. In order to avoid the procedural bar as alleged by the State, Petitioner must prove "cause" for the failure to raise this in earlier state petitions and actual "prejudice" to the Petitioner for this failure. *See Smith v. Murray*, 477 U.S. 527, 529, 106 S.Ct. 2661, 2663, 91 L.Ed.2d 434, 441 (1986); *Engle v. Isaac*, 456 U.S. 107, 129–35, 102 S.Ct. 1558, 1572–75, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87–91, 97 S.Ct. 2497, 2506–08, 53 L.Ed.2d 594 (1977). The Court notes that Evans' counsel at trial and on appeal did not represent him on his first state coram nobis petition nor on his first federal habeas petition. Habeas counsel now state that the facts of trial counsel's ineffectiveness did not surface until the pendency of the first federal habeas corpus petition and could not be raised before the Supreme Court of Mississippi decided the coram nobis petition. Brief in Support of Writ of Habeas Corpus. By affidavit, Stephen L. Winter, who represented Petitioner on his first federal habeas petition and helped supervise the preparation of the first state petition for writ of error coram nobis, stated that because of the exigencies of the impending execution date in 1983 and the inaccessibility of the client, counsel was not able to make a thorough, preparatory investigation although they had reason to consider a claim of ineffective assistance of counsel. The affidavit of Winter states that he considered a claim of ineffective assistance of counsel because of the poor state of the trial record. Winter met with the trial counsel, James Bell, to investigate his trial preparation and the possibility of an affidavit attesting to Bell's trial presentation. Winter states that before he could present his information regarding ineffective assistance of counsel the Mississippi Supreme Court denied the first coram nobis petition and set an execution date. At that time Winter filed a petition for writ of certiorari with the United States Supreme Court and a petition for writ of habeas corpus in this Court raising all the previously exhausted issues. Winter was unable to depose Bell concerning his trial presentation. Bell presently serves as a County Court judge in Hinds County, Mississippi.

Although Winter alluded to the poor state of the trial record, he stated that he had no actual information on which to base a claim for ineffective assistance of counsel at the time of his first state error coram nobis petition and the first federal habeas corpus petition. The Court finds, however, that all the claims for ineffective assistance of counsel originate from the trial record and could have been discerned solely from examination of the trial transcript. The Court finds, as did the Mississippi Supreme Court in *Evans v. State*, 485 So.2d at 281, that the Petitioner has not sufficiently shown "cause" for the failure to raise this claim earlier. Assuming arguendo that the Petitioner had met the standard for cause, the Court will also examine whether Petitioner has been "prejudiced" by the procedural default in failing to raise these claims earlier.

The Petitioner contends that he was denied effective assistance of counsel at trial because:

(1) trial counsel was wrongfully relying on the exclusion of evidence in the sentencing phase when he advised Evans to plead guilty,

(2) trial counsel failed to adequately prepare and present a reasonable and credible case in mitigation,

(3) counsel failed to object to slides of the crime remaining on the projection screen for over 15 minutes, and

(4) counsel failed to raise numerous other issues at trial or on appeal which rendered them procedurally barred from consideration by the Mississippi Supreme Court.

Ineffective assistance of counsel is judged by the standards first enunciated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. For the test of deficient performance, the proper standard is that of reasonably effective assistance; the defendant must show by specific acts and omissions that counsel's representation fell below an objective standard of reasonableness. *Id.* at 687–88, 104 S.Ct. at 2064. The defendant must also show that this deficient performance was prejudicial, or that the errors had an adverse effect on the defense. *Id.* at 693, 104 S.Ct. at 2067. The Court required a showing of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. Further, the Supreme Court stated:

When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.

*Id.* at 695, 104 S.Ct. at 2068–69.

The Court will examine whether or not counsel was ineffective at trial or on appeal for purposes of determining whether or not the failure to raise this claim prejudiced the Petitioner by his procedural default.

(1) *Erroneous Advice for Guilty Plea*

■■■ Petitioner claims that counsel's advice to plead guilty was based only on Mississippi cases without adequate investigation or research of constitutional standards for presentation of evidence in the sentencing phase. Petitioner asserts that trial counsel believed he could limit or keep out of the sentencing phase some of the state's evidence of the circumstances of the crime itself. Petitioner claims that trial counsel James Bell informed him that the sentencing hearing could be limited solely to the aggravating factors of "heinous, atrocious and cruel," "under sentence of imprisonment," and "arrest avoidance," and that all other evidence, including premeditation, could be excluded. Petitioner asserts he relied on this advice by Bell in pleading guilty. Evans argues that if trial counsel had properly researched constitutional standards, he would have realized he could not keep out such evidence relevant to the sentencing determination. Petitioner contends that but for counsel's erroneous advice, Evans would not have pled guilty. Petitioner notes that trial counsel had been in practice for only four years at the time of trial and had provided minor assistance in two prior death cases.

The Court has examined the trial transcript of the guilty plea which revealed the following. The trial court stated, to which defense counsel agreed, that the purpose in entering a plea of guilty was for winning

an extenuating factor with the jury in their consideration of the death penalty. [R. 70]. The prosecutor stated in front of the Defendant Evans before the guilty plea was taken that he probably intended to put a great deal of the same testimony on at the sentencing phase that he would have put on at the guilt/innocence phase. [R. 51]. The Court also said the State, in the sentencing phase, "would put on any evidence they had in what we call aggravation. That would mean anything that would tend to increase the severity of the crime and then you would be entitled to put on any evidence you have in mitigation or extenuation." [R. 57]. Evans' counsel stated that he felt the prosecutor would be limited to statutory aggravating circumstances. "I feel that the prosecutor can put on evidence similar to that that it would put on at the trial; however, it would be limited to those statutory circumstances as set forth in the Mississippi Code." [R. 71]. The Court then stated to Evans:

> Do you understand that even if you plead guilty to capital murder, the jury still would hear all the evidence in aggravation and extenuation; that is, the evidence that would tend to justify the death penalty and the evidence that would tend to prohibit the death penalty? I don't know if prohibit is a proper word, but the evidence that would tend to give them reason to believe that you should not receive the death penalty. Do you understand that?

[R. 72]. To which Evans replied, "Yes, sir."

Petitioner's argument of ineffective assistance of counsel is that Bell did not have knowledge of constitutional law and gave advice regarding the sentencing phase and a guilty plea based only on Mississippi case interpretation. The Court notes from the trial record of the sentencing phase that counsel properly raised objections to the admission of some evidence and counsel's

arguments showed a fair knowledge of United States Supreme Court cases. Petitioner was aware that evidence of several of the statutory aggravating factors would be offered by the State. The Court finds that trial counsel did not fall below the range of competence demanded of attorneys in criminal cases, *Strickland,* 466 U.S. at 687–91, 104 S.Ct. at 2064–66; *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970), with regard to advice of Evans' guilty plea and exclusion of certain evidence from the sentencing phase and even if it did, such shortfalls were cured by the comments of the trial judge made directly to Evans himself.

■ Petitioner further argues that trial counsel was ineffective because he failed to foresee the law as developed in *Booth v. Maryland,* —— U.S. ——, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and accordingly failed to consider the effect that testimony by the victim's family would have on the sentencing jury.[3] Petitioner argues that counsel therefore erred when he advised Evans to plead guilty and erred again in the sentencing phase by failing to limit family testimony in the trial. *Booth* was announced on June 15, 1987, and Evans' trial and sentencing occurred in 1981. It was clear at the time of Evans' trial, however, that testimony by the victim's family carries the potential for prejudicing the jury, and Petitioner objected to testimony of the victim's brother during the sentencing phase. Petitioner raised the issue in the first federal habeas corpus proceeding and this Court and the Fifth Circuit held that the testimony was not prejudicial and did not constitute a constitutional violation. *Evans,* 809 F.2d at 242; *Evans,* 631 F.Supp. at 289. Counsel was not ineffective for failing to keep this evidence out on this basis.

Further, the Court finds that this is not a case in which *Booth* applies.[4] The Su-

---

**3.** Petitioner asserted this additional issue on June 23, 1987, in an Amended Application for Stay of Execution. The arguments on this issue were conducted by telephone conference on June 25, 1987.

**4.** A claim against the brother's testimony based directly on *Booth* was presented to the United States Supreme Court with regard to the first federal habeas proceeding; therefore, this Court did not have a direct argument of *Booth* before it. Petitioner has urged *Booth* in this proceed-

preme Court in *Booth v. Maryland* held that evidence and statements of personal characteristics of the victim, the emotional impact of the crime on the family, and family members' opinions and characterizations of the crime and the defendant are irrelevant to a capital sentencing decision. *Booth*, 107 S.Ct. at 2531-33. In Evans' trial the victim's brother testified to identify the victim and to state that after his death the family business closed. [R. 239-43]. Although the brother cried on the witness stand, his testimony was brief and there was no testimony regarding his opinion of the crime or the defendant Evans, no testimony of any *personal* characteristics of the victim, nor any testimony of the *emotional* impact of the crime on the family. The Supreme Court in footnote 10 of the *Booth* opinion stated that such testimony is not wholly barred by the ruling. "Our disapproval of victim impact statements at the sentencing phase of a capital case does not mean, however, that this type of information will never be relevant in any context. Similar types of information may well be admissible because they relate directly to the circumstances of the crime." *Booth*, at 2535 n. 10. *Booth* does not prohibit testimony by the victim's family members, but it only limits the use of certain types of statements they may make during the sentencing phase. In Evans' trial the brother's testimony went only to the circumstances of the crime and not to the personal and emotional effect on the victim's family. The Court finds that under *Booth* the testimony of the victim's brother was not unduly prejudicial. Therefore, there are no grounds for ineffective assistance of counsel under this argument.

#### (2) *Mitigating Evidence*

■■■■ Petitioner contends that trial counsel failed to present a reasonably credible case in mitigation at the sentencing phase. As to the argument that counsel failed to call Evans' pastor, this Court held and the Fifth Circuit agreed that the trial court properly refused to allow another minister to testify merely on the Christian tenets of mercy. *See Evans*, 809 F.2d at 242; *Evans*, 631 F.Supp. at 285-86. For mitigating evidence, the Court looks to an individualized determination pertaining to the particular characteristics and background of the defendant and the particular circumstances of the crime. *Evans*, 631 F.Supp. at 286. The Petitioner has not indicated what the pastor's testimony would have been if introduced, and it is not shown how this would affect the outcome. Although the trial court could have allowed the testimony if it concerned Evans' individual background and character, *see Evans*, 631 F.Supp. at 286, there is no evidence that the pastor would have presented sufficient testimony to affect the outcome so that counsel's failure to put on this mitigating evidence was unreasonable or prejudiced the Petitioner.

■■■■ Petitioner argues that trial counsel did not develop relevant mitigating evidence about Petitioner's character and history. He claims that counsel was ineffective in failing to follow up on a psychiatrist's report. A psychiatrist was not appointed to serve as an expert witness for the defense, but the Petitioner was taken to the Mississippi State Hospital at Whitfield for two examinations. The first report was cursory and uninformative. Counsel was informed that the second report, which was not completed at the time of the plea hearing, revealed that Petitioner was sane to stand trial, but counsel did not check the report to discover Petitioner had a low intelligence quotient (IQ). There is no indication of what evidence of mental impairment a psychologist would have presented. Without any detailed facts, affidavits or other substantial proof, present habeas counsel merely states in the petition:

> In fact, the evidence that counsel failed to develop and present would have shown that Connie Ray Evans is a man of low intelligence, with psychological

---

ing only in regard to the claim of ineffective assistance of counsel. However, the denial today of a stay of execution and the writ of certiorari by the Supreme Court in the first habeas proceeding strengthens this Court's belief that there is no validity to the *Booth* assertion in this case. *Evans v. Thigpen*, — U.S. ——, 107 S.Ct. 3278, 97 L.Ed.2d 782 (1987).

problems; that he was suffering from depression at the time of the murder; that he presented a good prospect for rehabilitation and very little evidence of future dangerousness. Because of counsel's failings, virtually none of this information was available to the sentencing jury.

The Court notes that the Petitioner was questioned thoroughly by the judge and attorneys during the guilty plea and during the trial as to his thought processes leading up to the crime. There was no indication of insanity, incompetence or substantial mental impairment at that time. Petitioner has not overcome the presumption that trial counsel made a tactical decision that there was no evidence of psychological problems or mental impairment worth presenting. The Court finds that this did not fall below a reasonable level for effective assistance of trial counsel.

■■■ Petitioner also claims that trial counsel only met with family members and potential character witnesses once and failed to call more witnesses in mitigation. There is no proffer or factual basis presented by Petitioner as to what other mitigating evidence was available. Petitioner does not now present evidence of witnesses who would have testified or the subject matter of any other witnesses' testimony, so this Court cannot conclude that counsel was not reasonable in failing to call more witnesses or present more mitigation evidence. *Cf. Porter v. Wainwright,* 805 F.2d 930, 933 (11th Cir.1986) (evidentiary hearing ordered where petitioner did proffer a number of exhibits in state and federal habeas proceedings as evidence of mitigating circumstances sentencing attorney could have presented), *cert. denied Dugger v. Porter,* —— U.S. ——, 107 S.Ct. 3196, 96 L.Ed.2d 683 (1987). Counsel has no absolute duty to present character evidence, *Mitchell v. Kemp,* 762 F.2d 886, 889 (11th Cir.1985), but in those cases where *no* mitigating evidence was presented, courts have found ineffective assistance of counsel. *See Tyler v. Kemp,* 755 F.2d 741, 743–46 (11th Cir.1985); *Pickens v. Lockhart,* 714 F.2d 1455, 1465 (8th Cir.1983). This Court

declines to establish a checklist of required mitigating evidence. In the present case counsel did put on mitigating evidence that Petitioner cared for his mother, he worked and gave his mother most of his money to support her and his two younger sisters in a family of seven children, he was a good child, he got into trouble only by "running with bad boys," he had no previous violent crimes, he was remorseful and he had turned himself in to the police. This evidence was presented by Petitioner and Petitioner's mother, and counsel had tried to introduce the testimony of a minister. It is not unreasonable that trial counsel made a tactical decision not to bring in other potential character witnesses since counsel was aware they could also testify to prejudicial matters, such as Petitioner's prior juvenile record, which counsel was attempting to avoid. The decision not to seek more character or psychological evidence than was already admitted was within the range of professionally reasonable judgments. *See Strickland,* 466 U.S. at 699, 104 S.Ct. at 2070. Given the jury's finding of four aggravating factors, there is no reasonable probability that this suggested mitigating evidence would have changed the conclusion that the aggravating factors outweighed the mitigating circumstances. Petitioner has not established that counsel was ineffective.

### (3) *Slides*

■■ Petitioner asserts that trial counsel was ineffective for failing to object to the display of certain slides for 15 minutes during the cross-examination of Petitioner. The Court has previously ruled that these slides were properly admissible as evidence, *see Evans,* 809 F.2d at 242; *Evans,* 631 F.Supp. at 288, and the Petitioner now only addresses his argument to the length of time they were projected onto a screen during the cross-examination. The Court finds that the prosecutor did ask Petitioner questions regarding the position of the victim in the slide exhibits. [R. 397–405]. The trial record reflects that counsel had previously interjected several objections concerning the slides when they were first admitted, including that they were preju-

dicial; therefore, this Court cannot say that counsel's performance fell below a reasonable standard for failing to object to the amount of time for which the slides were displayed.

#### (4) *Other Issues Procedurally Barred*

■ Petitioner contends that failure to raise numerous issues at trial and on appeal caused them to be procedurally barred in the state petition for writ of error coram nobis. *See Evans v. State*, 441 So.2d at 522–23. This Court held in the previous habeas petition in this case that it would not honor a procedural default if there was a showing of cause and prejudice. *See Evans*, 631 F.Supp. at 274. Evans could have raised these issues, and indeed did raise several of these issues, in his first federal habeas corpus petition. Therefore, any procedural default in state court proceedings by counsel did not prejudice the Petitioner. Even if it can be said the failure fell below a reasonable standard, there is no prejudice of a different result under the standard of *Strickland*.

The Court thus finds that Petitioner was not rendered ineffective assistance of counsel at trial or on appeal under the *Strickland* standards. Therefore, Petitioner was not prejudiced by the failure to raise the claim of ineffective assistance earlier which resulted in a procedural default.

Finally, the Court notes that a reading of the record reveals a very conscientious effort by trial counsel in the representation of Evans. An exceptionally large number of objections were made in attempts to both exclude evidence and perfect a record for appeal. Evans was adequately represented by trial counsel.

#### CONCLUSION

The Court has found that Petitioner's claims of systematic exclusion of Blacks from juries and ineffective assistance of counsel at trial and on appeal are procedurally barred because Petitioner has not made the requisite showing of "cause" and "prejudice." The Court did consider these claims for purposes of finding no prejudice, however, and finds that they are without merit. Therefore, the Court denies Petitioner's Application for Stay of Execution. The Court hereby grants the Respondent's Motion to Dismiss for the reasons analyzed in this opinion.